# LYLES *v.* UNITED STATES.

CRIMINAL LAW; RAPE; EVIDENCE; REVERSIBLE ERROR; ORDER OF PROOF; INSTRUCTIONS TO JURY.

1. While the fact that the prosecuting witness in a prosecution for rape, made complaint recently after the commission of the alleged offense, is admissible generally and as evidence in chief, a statement made by her more than four weeks afterwards to her physician that she had been assaulted, is too remote from the occurrence, and is inadmissible.

2. Testimony of a physician who had examined the prosecuting witness, an unmarried woman, in a prosecution for rape, more than four weeks after the alleged crime, that he then found her hymen ruptured or penetrated, and that she was pregnant, is admissible against the accused.

3. Error by the trial court in a criminal case in sustaining objections by the prosecution to questions asked witnesses by defendant's counsel, on the ground that they were leading and suggestive, is not prejudicial to the defendant and, therefore, is not reversible error, where the witnesses on further examination and cross-examination testify to the facts sought to be elicited by such questions.

4. Where, in a prosecution for rape, wherein it is a material question whether the accused was, as claimed by the prosecution, in a certain house on a certain day between certain hours, the prosecution in rebuttal puts on the stand a witness who had been an occupant of the house at that time, which fact is developed on examination and cross-examination of the witness, it is error for the trial court to refuse to allow counsel for the accused on cross-examination to ask the witness whether the accused was in or about the house on the day and between the hours in question, on the ground that the evidence for the accused had been closed.

5. Two prayers of the accused in a prosecution for rape, held to have been properly refused by the trial court, upon the ground that if granted they would have encroached upon the province of the jury to determine the weight to be given the testimony of witnesses.

No. 1229. Submitted November 4, 1902. Decided December 2, 1902.

HEARING on an appeal by a defendant indicted, tried, and convicted of the crime of rape in the Supreme Court of the District of Columbia. *Judgment reversed.*

The facts are sufficiently stated in the opinion.

*Mr. John C. Gittings, Mr. Joseph R. Fague,* and *Mr. Ulysses Butler* for the appellant.

*Mr. Ashley M. Gould,* United States Attorney for the District of Columbia, for the United States.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The appellant, George Lyles, was indicted for the crime of rape, alleged to have been committed upon the person of Catharine Draeger, on the 27th day of February, 1901. The accused pleaded not guilty, and, upon trial, was found guilty, and was sentenced to confinement in the penitentiary for the term of thirty years. From that judgment he has appealed.

At the trial, to sustain the prosecution the Government produced and examined as a witness Catharine Draeger, the alleged victim of the crime, who testified that on the night of the 27th of February, 1901, between the hours of 7 and 8 o'clock, while on her way from the place of her employment in the neighborhood of Fifth and H streets, N. E., to her home on East Capitol street, between Fifteenth and Sixteenth streets, and while crossing the commons in the neighborhood of Fourteenth and B streets, she was accosted by a negro man, whom she described as of brown complexion,

wearing a black derby hat, a light overcoat and yellow shoes, and was about five feet eight inches high, wore a mustache and side whiskers; that this man put his arms around her, kissed her, threw her upon the ground, she all the while protesting, pulled up her clothes, and perpetrated the crime upon her; that she resisted and then fainted, and when she came too the man had disappeared; that during the time of the assault her assailant threatened to kill her if she cried or told upon him; that he had a large knife, which he pointed at her breast, and two pistols; that witness being sick after the assault, she did not inform any one of the assault until the next morning, the 28th of February, when she informed Officer Johnson of the ninth precinct, of the assault, and described him her assailant; that on the 23d of March of the same year, while going home from her place of employment, she met the same man who had assaulted her on the night of the 27th of February, at the corner of Massachusetts avenue and Ninth street, N. E.; that she was certain it was between 7:30 and 7:45 in the evening; that her assailant was dressed in the same manner as on the night of the 27th of February when he assaulted her on the commons; that he then and there said to her " you informed the police on me, and you promised you wouldn't tell;" to which she replied, " I did promise you that I wouldn't tell, and I haven't told anybody;" and she says that she begged him not to hurt her; but he smacked her face and knocked her down, and she then fainted; that there was no one in the immediate neighborhood excepting two little colored boys; that when she recovered she got up and walked up Massachusetts avenue towards her home, and met Officer Harry,— a mounted officer,— and informed him of what had just occurred at Ninth and Massachusetts avenue; that on Sunday, the 28th of April, of the same year, while in company with one Mrs. Osborne, she saw the man who had assaulted her looking out of the second story window of a frame house, on the northeast corner of Second and Maryland avenue, N. E. Witness and Mrs. Osborne were on the opposite side of the street; the man had his head out of the window, and he stuck his

tongue out at her in a suggestive manner; they went into a drugstore on the southeast corner of Second and Maryland avenue and watched the man in the second story window in the house across the street. The witness then identified the prisoner as her assailant on the night of the 27th of February; as her assailant on the 23d of March, and as the man she saw in the second-story window of the house on the northeast corner of Second and Maryland avenue, N. E., on the 28th of April, 1901.

On cross-examination, the witness testified that the night of the 27th of February was a dark night, and that the only light in the neighborhood was a gaslight at the corner of Twelfth and B streets, N. E., and that the assault occurred on the commons back of the pavement, but she was unable to state how far back from the street. That the assault on the night of the 23d of March occurred on the street; and that she was positive that the man who accosted her on the night of the 23d of March was the same man who had assaulted her on the night of the 27th of February. The witness further stated, that she had seen the man who had assaulted her, at other times and other places than those mentioned, but did not remember the dates. There were other witnesses examined for the prosecution, but only as to facts that tended to support the testimony of the prosecuting witness.

In the prosecution, it was incumbent upon the Government to establish two principal facts beyond reasonable doubt:

First. That the crime of rape had been committed upon the person of the prosecuting witness as alleged, and testified to by her; and, second, that the accused is the identical person who perpetrated the crime.

The crime of rape is not always easy to establish. It most generally depends upon the testimony of a single witness to the actual or alleged commission of the crime, and unless her testimony is beyond question or doubt, or made so by surrounding circumstances, there is danger in conviction. Hence it is always important to look to the conduct and character of the witness, and the circumstances that may

concur or otherwise with her statement of the alleged commission of the offense. The testimony of the prosecuting witness is always more or less credible according to the circumstances that may concur with her statement of the alleged crime. If the witness be of good character; if she, without delay, discovers the offense, and make reasonable effort to have the offender arrested; show circumstances and signs of the injury, such as indicate violence on the part of the accused, and resistance on the part of the witness,— are all circumstances that strongly corroborate her testimony. And so if the place where the alleged crime was committed was remote from inhabitants, or passengers, or out of hearing distance, or the accused fled from it; these, and the like, are concurring evidences to give greater probability to her testimony, when proved by others as well as herself.

But, on the other hand, if the prosecuting witness conceals the injury for any considerable time after she had an opportunity to complain; if the place where the criminal act is alleged to have been committed be near to inhabitants, or common thoroughfares or passage-way of people, and she made no outcry when the alleged act was done, when and where it is probable she might have been heard by others; these, and the like circumstances, carry a strong presumption that the testimony is false and feigned. 1 Hale P. Cr. 633; 1 East P. Cr. 445.

It seems to be settled that the fact that the prosecuting witness made complaint recently after the commission of the alleged crime is admissible generally, and as evidence in chief. It is admitted as a test applicable to the accuracy as well as the veracity of the witness, and, therefore, it seems that her account of the transaction, if communicated recently, is properly admissible. *Brazier's Case,* 1 East P. Cr. 445.

1. In this case, after the examination of the prosecuting witness, and for the purpose of furnishing support to her testimony, the Government called as a witness Dr. Pickford, who testified that some time during the latter part of March or the 1st of April, 1901, the prosecuting witness called upon him and claimed that she had been assaulted. The attorney

for the prosecution then asked the witness whether he had made an examination of the prosecuting witness; to which the counsel for the accused objected, upon the ground that both the examination, if made, and the statement of the prosecuting witness that an assault had been made upon her, were too remote to be considered by the jury; and he, therefore, moved the court to strike out the statement of the prosecuting witness made to the doctor as to the assault made upon her. But the motion to strike out was overruled by the court, and also the objection to the admissibility of the fact of examination of the witness by the doctor. The latter thereupon proceeded to state that he made an examination which disclosed the fact that the vagina had been penetrated, and to the best of his judgment she was then pregnant between seven and eight weeks gone,— but as to this he could not speak with absolute certainty.

We think there was error in refusing to strike out and reject the statement of the prosecuting witness made to the doctor, of the fact that an assault had been made upon her. This was a principal fact in the case, and it is difficult to say how it may have been regarded by the jury, coming into the case as it did. It was not a communication made *recently* after the fact, within the meaning of the authorities. It was made to the doctor something more than four weeks after the alleged fact. This, we think, was entirely too remote from the occurrence, and, therefore, inadmissible. There are many motives that may have actuated the witness to apply to the doctor, other than the fact of rape.

But we perceive no error in allowing the doctor to testify to the fact of his examination of the witness, and as to what that examination disclosed. The prosecuting witness was, as we infer from the record, an unmarried woman, and it was important to the prosecution that it should be shown that the hymen of the witness had been ruptured or penetrated. It has been well said that it would be difficult to support an accusation of rape where the hymen is found entire. Beck Fed. Juris. 53; Ros. Cr. Ev. 709. But the fact that the witness was found to be pregnant does not in any manner

refute the evidence of the alleged rape. The old notion that the woman's conception was evidence of consent has long since been exploded. 1 East. P. Cr. 445; Ros. Cr. Ev. 708.

2. The next exception noted by the accused, was to the refusal of the court to permit counsel of the accused to ask witness Rich, a witness produced by the accused, whether or not she saw the accused on February 27, 1901? This question was objected to by the counsel for the Government, upon the ground that it was a leading question; and the court sustained the objection, because the question was supposed to be leading. The question may have been objectionable in form, under some circumstances, but we fail to perceive that it could have been hurtful in this case, in view of the preceding evidence. But there is no reversible error in this exception, as the witness, on further examination, stated that she could not recall any particular date in the month of February that she saw the accused.

3. And the same is true in respect to the exception taken by the accused to the disallowance of questions propounded to witness Wright,— a witness produced on the part of the accused. That witness was asked to state whether or not he saw the accused on the 23d day of March, 1901; and further, he was asked to state what occurred on the Saturday night that he recollected seeing the accused at his, the witness', house. Both of these questions were objected to by counsel for the prosecution, upon the ground that they were leading and suggestive; and the court sustained the objection. But on cross-examination, the witness stated that he did not recollect ever having seen the accused in March, and did not recollect ever having seen him in January or February. In sustaining the objection to the questions, therefore, it does not appear that there was any injury done the accused.

4. In another exception taken by the accused, it appears that after the latter had closed his evidence in defense, the Government produced in rebuttal a witness by the name of Cutler or Adams, by whom the prosecution proved that the accused was known to witness, and the latter knew when the accused was arrested. He was then asked by the attorney

for the prosecution, " whether a white man, shortly after the accused was arrested, came to his house in the evening and knocked on the door, and whether he put his head out of the window and said that the accused was not in, or did any one else, to his knowledge, do so." To which he replied, " No, sir." This witness, on cross-examination, testified that he was the man called Cutler, and occupied the upper portion of the house on 'the northeast corner of Second 'and Maryland avenue, N. E. (the house described in the testimony of the prosecuting witness, where she and Mrs. Osborne saw the accused in the second-story window on Sunday evening, April 28, 1901), and that Louis Lyles, the brother of the accused, occupied the lower portion of the house; that the witness was home when the officers called about 2 o'clock on Sunday evening, April 28, 1901. The counsel for the accused then asked leave of the court to examine the witness, or that the court would examine him, to ascertain who was in the second story of the house on the northeast corner of Second and Maryland avenue, N. E., on Sunday, April 28, 1901, between the hours of 12 and 2 o'clock. But to this the attorney for the prosecution objected, and the court sustained the objection. This ruling of the court seems to have proceeded upon the ground that because the evidence for the accused had been closed, therefore no further evidence in chief was admissible. But, in a case like the present, we think the right of cross-examination should have been allowed the accused, and that right fairly extended to the facts sought to be elicited from the witness produced by the Government in rebuttal. The fact of the presence of the accused in or absence from the house on the northeast corner of Second and Maryland avenue, N. E., between the hours of 12 and 2 o'clock, Sunday evening, April 28, 1901, was a very material fact in the case, as affecting the identification of the accused, according to the testimony produced on behalf of the prosecution. The Government having produced and examined the witness, thereby avouched his credibility, and there could be no motive or propriety in excluding any material fact that he could prove. The witness, according to his evidence given

on examination for the prosecution, occupied the upper portion of the house on the northeast corner of Second and Maryland avenue, at the time in question, and when the officer came in search for the accused; and it was certainly competent to question him for the defense, as to whether the accused was in or about the house at any time between the hours of 12 and 2 or 3 o'clock of that day, to the knowledge of the witness. We think his examination as proposed should have been allowed.

5. The exceptions taken to the refusal of the two prayers offered on the part of the accused, cannot be maintained. The prayers, if granted, would have been an encroachment upon the province of the jury. It was for the jury to determine to what extent, and in regard to what facts, they would believe the witnesses. The court in its oral charge or instruction to the jury gave the accused the full benefit of the principle sought to be applied by the prayers offered, though not as a matter of law and in the imperative form proposed.*

---

* The two rejected prayers of the defendant were:

" 1. The jury are instructed, as a matter of law, that if they believe from the evidence that the complaining witness has been impeached as to material facts, then they can refuse to credit her whole evidence.

" 2. The jury are instructed that if they believe from the evidence that the defendant on the evening of March 23, 1901, left the Du Bois Building, situate on the corner of Eighth and H streets N. W., in company with the Messrs. Yates between the hours of 7 and 7:15 o'clock, P. M., and accompanied the younger Mr. Yates as far as the corner of Sixth street and Virginia avenue S. W., reaching there about 5 or 10 minutes to 8 o'clock, the same evening, then their verdict should be 'not guilty' on both counts."

That portion of the court's charge to the jury which dealt with the subject-matter of these prayers, was as follows:

" It is a familiar rule that it is the peculiar and exclusive province of the jury to decide upon the credibility of witnesses. The credit to be given to the testimony of the defendant as well as that of every other witness is to be determined solely by the jury, and in doing so, you may take into consideration any bias or prejudice, if you find there is any, on the part of any witness for or against the defendant. And you may also take into consideration the interest, or want of interest, of such witness, or any of the witnesses, in the result of the case and give

Because of the errors in the rulings of the court referred to, and specified in the foregoing opinion, the judgment appealed from must be reversed, and the cause be remanded for a new trial; *and it is so ordered.   Judgment reversed, and cause remanded.*

3. Such regulation is not unreasonable because it fails to fix definitely the length of time a vendor may occupy one place without violating its provisions; it does not repose any arbitrary discretion in the police charged with its execution; and, by a proper construction of it, a vendor is not prohibited from stopping for any pur-

---

to their testimony such weight and credit as in your judgment it is fairly and justly entitled to.   Moreover, it is the discretion of the jury to wholly reject the testimony of any witness whom they believe to have knowingly and wilfully testified falsely as to any material fact or facts in the case."— REPORTER.