**UNITED STATES of America ex rel. Alfred M. WOLAK, Appellant,**

v.

**Howard A. YEAGER (Warden).**

**No. 16719.**

United States Court of Appeals Third Circuit.

Submitted on Briefs Oct. 5, 1967.

Decided Nov. 6, 1967.

Rehearing Denied Dec. 26, 1967.

Alfred M. Wolak, pro se.

John G. Thevos, Prosecutor of Passaic County, Paterson, N. J., (Archibald Kreiger, Asst. Prosecutor, Paterson, N. J., on the brief), for appellee.

Before STALEY, Chief Judge, and MARIS and VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

This case is before the court on appellant's appeal from the denial of his second writ of habeas corpus filed with the District Court after his 1959 sentence to a term of 25 to 30 years, following the jury's return of a verdict of guilty of second degree murder. The background facts are summarized in the District Court opinion as follows:

"The facts pertinent to this application are that on September 28, 1956, an indictment charging petitioner with first-degree murder was returned. Petitioner went to trial and

on December 10, 1956, a jury found him guilty of first-degree murder with a recommendation of life imprisonment. On appeal the judgment of conviction was reversed for error in the charge. State v. Wolak, 26 N.J. 464, 140 A.2d 385 (1958). A new trial was commenced and the state again sought the death penalty. The second trial resulted in a mistrial and a third trial was started,—the state still seeking the death penalty. This trial resulted in a conviction of second-degree murder and the imposition of his present sentence of 25 to 30 years. Petitioner appealed the conviction to the New Jersey Supreme Court, alleging that the mistrial was improperly granted and hence he was placed in double jeopardy. His conviction was affirmed. State v. Wolak, 33 N.J. 399, 165 A.2d 174 (1960), cert. denied, 365 U.S. 822 [81 S.Ct. 710, 5 L.Ed.2d 701] (1961). Petitioner then filed an application for a writ of habeas corpus in this court alleging double jeopardy. A Memorandum and Order denying relief was filed on March 8, 1962. In the Matter of Wolak, Civil No. 1013–61 (D.N.J.) (Lane, J.)."

Relying on decisions holding that a defendant found guilty of second-degree murder[1] or first-degree murder with recommendation of life imprisonment[2] cannot be convicted of a higher degree of crime or be sentenced to death after a second trial, appellant contends that it was reversible error to subject him to a trial in 1959 on a charge of first-degree murder involving the possibility of the death penalty, in view of the verdict that he was guilty of first-degree murder with recommendation of life imprisonment at his first trial. We agree with the conclusion of the District Court, stated as follows, that any claim of prejudice was purely speculative and that the prosecution of defendant for first-degree murder was, beyond a reasonable doubt, at most harmless constitutional error[3] [cf. Chapman v. State of

1. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). It is noted that the court indicated in footnote 15, at pages 194–5, that this decision had no application to state court prosecutions.

2. State v. Wolf, 46 N.J. 301, 216 A.2d 586, 12 A.L.R.3d 970 (1966). It is noted that this case, as well as State v. Williams, 30 N.J. 105, 152 A.2d 9 (1959), was decided after the April 28, 1959, trial and that in 1959 the rule of Green v. United States, supra, had not been held to be a guarantee of the Fourteenth Amendment. For this reason, because Hetenyi had been found guilty of second-degree murder at his first trial, and because of the language in Chapman v. State of California, 386 U.S. 18, 21–22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), among other reasons, United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2nd Cir. 1965), cert. den. Mancusi v. Hetenyi, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966), is inapplicable to the situation presented by this record.

3. The claim of "prejudice" is contained in the following language at pages 7–8 of the Petition for a Writ of Habeas Corpus, being an insert to paragraph 12 of the Petition:

"The issue of treble jeopardy that is raised here is not rendered moot because the appellant in his first trial received a jury recommendation of life imprisonment rather than death. This result in no way lessened the prejudice which Wolak suffered by reason of his having been made to stand trial under a possible sentence of the death penalty.

"In addition, the defense was compelled to try its case and to select its jurors not only with an eye toward acquittal, but with the added burden of attempting to avoid a possible death penalty, which is submitted could not have been imposed.

"Hence, if the trial court had sustained the defense motion (to strike the death penalty) which had been made at the outset of the case and before jury selection commenced, the subsequent dismissal of jurors who would have otherwise been selected but for their scruples against capital punishment, would never have been permitted.

"It is submitted that the questioning having to do with each juror's scruples against capital punishment was completely improper as being irrelevant, inasmuch as the death penalty was improperly sought. Such questioning could not help but to work to the disadvantage and prejudice of the appellant."

California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) [4]:

"The only real allegation of prejudice asserted in petitioner's application is that the defense had to select jurors with an eye toward avoiding the death penalty and that this resulted in the dismissal of jurors who would otherwise have been selected. We find that this allegation is purely speculative in that there is no basis in fact for the claim that the group of jurors selected was more likely to return a conviction than those members of the jury panel that might have been chosen. * * * Consequently, we are convinced beyond a reasonable doubt that petitioner was not harmed by being subjected to the possibility of the death penalty at his third trial. This finding is supported by the fact that at that trial he was convicted only of the lesser crime of second-degree murder." [5]

In the event that prejudice should be more than speculative, there is every indication that the principles of the cases cited in this opinion would not be applied retroactively to state court action taken in April 1959, which was consistent with the constitutional rules effective at that time. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and cases there cited.

The judgment of the District Court will be affirmed.

4. In this case the court used this language at pages 21–22, 87 S.Ct. at p. 827:

"We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful. * * * We decline to adopt any such rule. All 50 States have harmless-error statutes or rules, and the United State long ago through its Congress established for its courts the rule that judgments shall not be reversed for 'errors or defects which do not affect the substantial rights of the parties.' 28 U.S.C. § 2111. None of these rules on its face distinguishes between federal constitutional errors and errors of state law or federal statutes and rules. All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not [requiring] the automatic reversal of the conviction."

See Van Alstyne, In Gideon's Wake: Harsher Penalties and The "Successful" Criminal Appellant, 74 Yale L.J. 606, 623 ff. (1965); Note, Double Jeopardy, The Reprosecution Problem, 77 Harv.L.Rev. 1272 (1964).

5. The closing speeches of counsel (N.T. 2904 ff. of transcript of 4/27/59—Passaic County Court, Criminal Division, Indictment 29–56) make clear that the principal issue submitted to the jury at the third trial was the defense of insanity, including alleged temporary insanity induced by alcohol and drugs.