James **BAILEY**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Ronald **HUMPHRIES**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

**Nos. 21297, 21585, 21298, 21586.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 24, 1968.

Decided Sept. 13, 1968.

---

Mr. Gordon Forester, Jr., Washington, D.C. (appointed by this court), for appellants.

Mr. Albert W. Overby, Jr., Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Nicholas Nunzio, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and BURGER and TAMM, Circuit Judges.

TAMM, Circuit Judge:

These cases come before us as appeals from a District Court trial by jury which resulted in a verdict of guilty against both of our appellants on the charge of carnal knowledge of a female under sixteen years of age. Appellants were thereafter sentenced under the Federal Youth Corrections Act (18 U.S.C. § 5010 (b) (1964)). Appellants assert nine separate allegations of error. Four of the allegations have warranted seriatim treatment while the remaining five have been reviewed and we find that they are without merit.

One Vivian Robinson, the prosecutrix, alleged that on March 27, 1966, she accompanied the appellants and two juveniles to the basement laundry room of 76 Forrester Street, in the Southwest section of the District of Columbia. She further asserted that there, upon the basement floor, she was sexually assaulted four or five times. The prosecutrix and her mother made a prompt report of the incident and criminal charges were brought against appellants for violation of the District of Columbia rape statute (22 D.C.Code § 2801 (1967)). At trial the Government introduced independent evidence corroborating the rape. This evidence consisted of testimony of several witnesses as to the distraught physical condition of the prosecutrix immediately after the event, testimony of her mother as to the presence of semen on her body, and testimony of prosecutrix that the lights were turned off in the basement, coupled with the fingerprints of appellant Bailey on a light bulb found in the basement. The appellants admitted being present at the time and place in question but denied ever having had sexual relations with the prosecutrix. In addition, appellants produced medical testimony from two physicians to the effect that there was no evidence of any sexual attack. As heretofore mentioned, the appellants were found guilty as charged by the jury. Two months after trial a motion was made for a new trial based upon newly discovered evidence. After inspection of the documents upon which the motion was based, it was denied by the trial judge.

I

The appellants were found guilty of violating 22 D.C.Code § 2801 which provides in pertinent part:

Whoever * * * carnally knows and abuses a female child under sixteen years of age, shall be imprisoned for not more than thirty years: *Provided,* that in any case of rape the jury may add to their verdict, if it be guilty, the words "with the death penalty," * *.

The prosecution, at the outset of the case, specifically stated that it was not going to seek the death penalty (Tr. at 7). The prosecution, however, requested and was allowed to ask death qualifying questions of the veniremen (Tr. at 7–8). This resulted in seven veniremen being excluded for cause because they answered the following or similar questions in the affirmative: "Even though the facts were so aggravated that all the other jurors, eleven of them, felt that the death penalty should be voted, you still would not be able to do so" (Tr. at 26). One

other potential juror stated that she was morally opposed to the death penalty but that if all the other jurors voted for its imposition she could and would do so also (Tr. at 28). She was not disqualified and served on the jury. This case was argued in this court on April 24, 1968, and its disposition was deferred pending the outcome of two cases, Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) which were then pending in the Supreme Court. It is our view that no constitutional infirmity exists in the jury selection method used in this case since its validity is confirmed by the dictates of both of the aforementioned cases.

In this jurisdiction the jury selection method in use at the time of this trial is prescribed in detail by statute, 11 D.C. Code §§ 2301–2314 (1967). The procedure is essentially as follows: a jury commission selects prospective jurors "from intelligent and upright residents of the District," the commission writes the names of these jurors "on separate and similar pieces of paper" which are placed in a sealed box, then, at least 10 days before the commencement of each term of the District Court, the seal is broken and the names are drawn by lot. Thus, it can be readily seen that names of people from all walks of life constituting a cross-section of the community are placed in this box from which jurors are ultimately selected. Judge Prettyman in Turberville v. United States, 112 U.S. App.D.C. 400, 303 F.2d 411, cert. denied, 370 U.S. 946, 82 S.Ct. 1596, 8 L.Ed.2d 813 (1962) stated that the law in this jurisdiction was that (Id. at 419):

> [t]he point at which an accused is entitled to a fair cross-section of the community is when the names are put in the box from which the panels are

drawn. Chance governs the next step. The panel drawn by lot may or may not be a cross-section of the community.

The Witherspoon case then qualified this to the extent that in a capital case jurors may not be excluded for cause merely because they "are opposed" to or "have scruples against" the death penalty. Both Witherspoon and its sequel Bumper, further stated that this exclusion of jurors is prejudicial only where the jury actually returns the death penalty and that it has no effect upon the return of any other verdict, id est, one of imprisonment. In addition, Witherspoon explicitly states that it does not prohibit the exclusion of veniremen whose attitude toward the death penalty prevents them from reaching an impartial decision on the issue of guilt. Witherspoon, supra 391 U.S. 522–523, 88 S.Ct. 1770.

■ We are now faced with the question of whether appellants are prejudiced by the exclusion of these jurors since we do hold that under the recent Jackson decision (see part II infra) the jury could not properly have returned the death penalty. We feel that no prejudice resulted. Appellants contend that after the seven jurors were struck for cause the remaining jurors who were not opposed to the death penalty, were necessarily "prosecution prone" and that therefore they were deprived of a trial by an impartial jury. To support their contention appellants submitted several sociological studies.[1] We find, however, upon independent analysis and upon the basis of Witherspoon and Bumper that:

> [t]he data adduced by petitioner * * * are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. * * * "[2]

1. E.g. Oberer, Does Disqualification of Jurors for Scruples Against Capital Punishment Constitute Denial of Fair Trial on Issue of Guilt (39 TEXAS L.REV. 545 (1961)); Grosson, An Investigation into Certain Personality Variables Among

Capital Trial Jurors, (W.RES.U. (1966)). Similar studies set forth in Witherspoon and Bumper have been inspected and found unpersuasive.

2. Witherspoon v. State of Illinois, 391 U. S. 510, 517, 88 S.Ct. 1770, 1775 (1968).

The appellants' case is, of course, even weaker than either *Witherspoon* or *Bumper* since the voir dire here only excluded those who could under no circumstances render a verdict of guilty with the death penalty and the one juror who "was opposed" to the death penalty was seated and actually served as one of the twelve jurors who rendered the decision appealed from. We conclude therefore that the jury which found appellants guilty in this case was an impartial one.

## II

Appellants urge that 22 D.C. Code § 2801, *supra,* is unconstitutional under the recent decision of United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) which invalidated the death penalty portion of the Federal Kidnapping Act (18 U.S.C. § 1201(a) (1964)) as violative of the seventh amendment right to trial by jury. The Court in *Jackson* found that a statute which requires the defendant to risk death by exercising his constitutional right to trial by jury "imposes an impermissible burden upon the exercise of a constitutional right," but the Court went on to say "we think that provision (the death penalty) is severable from the remainder of the statute." *Jackson, supra* at 572, 88 S.Ct. at 1211. The District of Columbia rape statute suffers from this same constitutional infirmity [3] and therefore the italicized portion of the statute as set out below in footnote three must be stricken from the statute. We feel that to allow the statute to remain as enacted would be to create

future litigation and waste valuable judicial time. Although our appellants were not prejudiced by the invalid section, they did raise its constitutionality both in their brief and on oral argument. We therefore feel that it is both proper and expeditious for us to take action on its constitutionality at this time. Thus, we strike this section of the statute out because in any future prosecution under this statute to allow it to stand would be to "discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." [4] Since it is well settled that the unconstitutionality of part of a statute does not necessarily defeat the validity of its remaining provisions the remainder of our rape statute must remain intact.[5] In this regard, we do not agree with appellants that the rendering of this part of the statute invalid also renders their convictions invalid. Appellants received a trial by a completely fair and impartial jury and they were not intimidated by the threat of death into either waiving trial by jury or pleading guilty. We find no prejudice to appellants once they had successfully asserted their constitutional right to trial by jury.

The dissent, sua sponte, sets forth still another tack for reversal which merits discussion. Judge Fahy propounds the somewhat metaphysical argument that because the jury was instructed that it could impose the death penalty their thinking or reasoning could have been thereby prejudiced as to the determination of appellants' guilt or in-

---

3. The invalid section of the Federal Kidnapping statute read:

 Whoever knowingly transports * * * *shall be punished by * * * death * * * if the verdict of the jury shall so recommend,*

 and the section of the D.C.Code hereby invalidated reads:

 Whoever has carnal knowledge * * * shall be imprisoned * * * *Provided, that in any case of rape the jury may add to their verdict, if it be guilty, the words "with the death penalty," in which case the punishment shall be death by electrocution:*

 *Provided further, That if the jury fail to agree as to the punishment the verdict of guilty shall be received and the punishment shall be imprisonment as provided in this section.*

4. United States v. Jackson, 390 U.S. 570, 581, 88 S.Ct. 1209, at 1216, 20 L.Ed.2d 138 (1968).

5. *E.g.* Champlin Rfg. Co. v. Corporation Comm'n., 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1932); Pollock v. Farmers' Loan & Trust Co., 158 U.S. 601, 15 S.Ct. 912 (1895); Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294 (1891).

nocence.[6] The basis for such an assertion apparently is United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2d Cir. 1965), cert. denied, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966).[7] *Wilkins*, however, involved a defendant who was tried three times, each time under an indictment for first degree murder. The court there reversed and held that it was double jeopardy to try a person again for first degree murder after the first trial had convicted him only of second degree murder, notwithstanding the fact that in the third trial the jury found him guilty of second degree murder. In *Wilkins* the indictment in all three trials was for first degree murder and the prosecutor actively sought the death penalty and presented evidence for that purpose. Unlike *Wilkins* the prosecutor here specifically stated that he was not going to seek the death penalty (Tr. at 7) and presented no evidence to that end. Since the teaching of *Wilkins* is that reversal is required only where there is a "reasonable possibility" of prejudice, we find that none existed here. In fact, the court in *Wilkins* fortifies our position by stating (*Id.* at 866):

> We are not suggesting that whenever * * * a greater charge is improperly submitted to the jury the trial is

rendered constitutionally inadequate * * *.

We conclude therefore that no reasonable possibility of prejudice existed to appellants by reason of the jury being instructed that the statute permitted them to impose the death penalty.[8]

### III

The third allegation of error is that there was insufficient corroboration of the corpus delicti. As previously mentioned the appellants do not deny that they were present at the time and place involved but they do deny that either of them had sexual relations with the prosecutrix. Thus, they contend that there is no corroboration of the physical attack itself.

 It is well settled in this jurisdiction that there must be independent proof that points to the probable guilt of the defendant, or, at least corroborates indirectly the testimony of the prosecutrix.[9] We feel that this standard has been met here. We cannot say, as a matter of law, that a reasonable juror could not conclude that appellants were guilty of the crime charged. A reasonable jury could find, notwithstanding the lack of direct medical evidence confirm-

6. The argument seems to be that the statute presents the jury with a third alternative, *id est*, guilty plus death, which *could* influence them to resolve their doubt as to guilt by returning a verdict of guilty but without imposing the death penalty, as a compromise verdict.

7. The rationale of *Wilkins* (as used by the dissent) was specifically repudiated by the Third Circuit in United States ex rel. Wolak v. Yeager, 385 F.2d 478, 479–480 (1967).

8. One additional point should be added since the dissenting opinion considers as crucial the issue of whether prejudice arises from submitting a non-capital case to the jury as a capital case, even though the guilty verdict rendered did not attach the death penalty. Reliance is placed on the prejudice theory developed in *Wilkins* and later enunciated in Cichos v. State of Indiana, 385 U.S. 76, 81, 87 S. Ct. 271, 274, 17 L.Ed.2d 175 (1966):

> [I]t again gave the prosecution the advantage of offering the jury a choice

—a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence.

The short answer is that *Wilkins*, like the dissent in *Cichos*, was dealing not with *penalties* but with the submission of improper *offenses* to the jury. Here, the offense was the same, there was no "choice" offered to the jury in this respect; moreover, the prosecution made clear it was not seeking the death penalty.

9. Kidwell v. United States, 38 App.D.C. 566 (1912); Thomas v. United States, 128 U.S.App.D.C. 233, 387 F.2d 191 (1967); Ewing v. United States, 77 U.S. App.D.C. 14, 135 F.2d 633 (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L. Ed. 1145 (1943); Roberts v. United States, 109 U.S.App.D.C. 75, 284 F.2d 209 (1960), cert. denied, 368 U.S. 863, 82 S.Ct. 109, 7 L.Ed.2d 60 (1961); Walker v. United States, 96 U.S.App. D.C. 148, 223 F.2d 613 (1955).

ing a sexual attack, that an attack did occur based upon the testimony of Mrs. Johnson, the fingerprints on the light, the prompt report of the incident, and the testimony of all the other witnesses[1] as to the physical condition and appearance of the prosecutrix immediately after the alleged occurrence. The jury, upon proper instructions, weighed the merits and ambiguities of the evidence and we find that it was proper for the trial judge to allow them to do so. There can be no absolute test or concrete guidelines set down as to what constitutes corroboration in a rape case. Each case must be evaluated on its own merits. We hold therefore that there were sufficient corroborative facts and circumstances here to merit this case being submitted to the jury for its determination.

## IV

Finally, appellants contend that the trial judge erred in her denial of a motion for new trial based upon newly discovered evidence. This newly discovered evidence consisted of discrepancies in the testimony of the prosecutrix and her mother at the Juvenile Court trial of appellant Bailey's younger brother for the same offense. This trial occurred two months subsequent to our trial, on August 15, 16, and 17, 1967. Since the offense was allegedly committed on March 27, 1966, there was a lapse of' some seventeen months between the date of the offense and the date of the disputed testimony. This delay coupled with the great trauma and anxiety which naturally attaches to an event such as this must be considered factors which militate against the significance of the alleged discrepancies in testimony.[10]

■ The test and criteria to be applied in weighing motions for a new trial are clearly set out in Thompson v. United States, 88 U.S.App.D.C. 235, 188

F.2d 652 (1951). In applying that test to the facts of this case we feel that the discrepancies in the prosecutrix' testimony are inconsequential and do not relate to the material issues in the case. As for the discrepancies in the mother's testimony, we feel that it was within the discretion of the trial judge to find, as she did, that they related to the credibility of the witness and were not such that would "probably produce an acquittal."[11] It should be pointed out that several other witnesses in addition to the mother testified as to the prosecutrix' physical condition and that the testimony of all the other government witnesses was essentially the same as that adduced in District Court. It should be noted also, of course, that the mere fact that Larry Bailey was acquitted in the Juvenile Court proceedings has no indpendent significance for it is quite possible that in two trials of the same case by two different juries the results could be diametrically opposed. This, however, is not the issue here before us. The issue is whether the trial judge abused her discretion in denying appellants' motion for new trial. We feel she did not. We must therefore conclude that there was no abuse of discretion by the trial judge in her denial of appellants' motion for new trial based upon newly discovered evidence.

■ Thus, the appellants' convictions are affirmed as we find that they received a fair trial which was conducted without prejudicial error. Since we find that the death penalty portion of 22 D.C. Code § 2801 is invalid, that section should hereafter be read as:

Whoever has carnal knowledge of a female forcibly and against her will, or carnally knows and abuses a female child under sixteen years of age, shall be imprisoned for not more than thirty years.

10. The following cursory colloquy clearly reflects such excitement and confusion in the Juvenile Court trial (Tr. at 34):
 Q. Did you in fact scream? A. It's been so long.
 Q. And it has been confusing and you don't remember? A. Yes; and

after I went to the hospital the doctor told me to try and get my mind off the case.

11. Thompson v. United States, 88 U.S. App.D.C. 235, 188 F.2d 652, at 653 (1951).

To the extent that it is inconsistent with this holding Lindsey v. United States, 77 U.S.App.D.C. 1, 133 F.2d 368 (1942) may be regarded as no longer controlling. Our holding will affect only those defendants whose trials began after the *Jackson* decision, *id est*, after April 8, 1968.

Affirmed.

FAHY, Senior Circuit Judge, (concurring in part, dissenting in part):

I concur in the decision in Part II of the opinion of the court that under the recent decision of the Supreme Court in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, the death penalty provision of the District of Columbia rape statute is unconstitutional. As the court holds, the statute should be read with that provision eliminated.

The result is to place the appeals in a posture which I think requires reversal of the convictions, aside from any question raised by the other recent decisions of the Supreme Court in Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, and Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1778, 20 L.Ed.2d 797. I assume arguendo that under those decisions the jury which tried these appellants must be deemed to have been impartial on the issue of their guilt and since the jury did not attach the death penalty to their verdicts prejudicial error did not arise from the composition of the jury.[1]

The reversible error I find is that the court instructed the jury on three separate occasions that they could render "a verdict of guilty [of carnal knowledge] with the death penalty." Under the intervening decision of the Supreme

Court in *Jackson* this must now be held to have been error.[2] The impress upon the jury of these instructions was not obviated by the failure of the prosecution to request the death penalty. Notwithstanding this position of the government, the judge felt obliged to place the responsibility upon the jury; and this part of their duty was to be performed on the evidence before them, for there is no law or practice in this jurisdiction which required the parties to adduce evidence bearing specifically on the penalty, other than that received on the issue of guilt.

I suggest that it would be inconsistent with a fundamental principle of appellate review for an appellate court to assume in so vital a matter that the jury disregarded the instructions referred to.

The issue therefore is whether prejudice arises from submitting a non-capital case to the jury as a capital case, though the guilty verdict rendered did not attach the death penalty. Obviously there is prejudice in this; for

> First, it exposed [defendants] to the hazards of prosecution and conviction for the more onerous offense. Second, it again gave the prosecution the advantage of offering the jury a choice —a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence. See United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (C.A.2d Cir. 1965), cert. denied, Mancusi v. Hetenyi, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966).

Cichos v. State of Indiana, 385 U.S. 76, 81, 87 S.Ct. 271, 274, 17 L.Ed.2d 175, dissenting opinion of Mr. Justice Fortas, in which the Chief Justice and Mr. Jus-

---

1. I make the assumption only arguendo because the prosecutions in *Witherspoon* and *Bumper* were under statutes validly defining the offenses there on trial as capital crimes, so that inquiry of the jurors as to their attitude toward the death penalty was relevant; whereas these appeals, in light of *Jackson*, were erroneously considered as capital cases,

so that the attitude of the jurors towards the death penalty was irrelevant.

2. Counsel for appellants filed in this court a Supplemental Brief relying upon *Jackson*. He explicitly claimed prejudicial error in the instructions referred to. My brethren accordingly are mistaken in characterizing my reference to this matter as *sua sponte*.

tice Douglas joined. The opinion in the *Hetenyi* case, thus referred to with approval, was written by Circuit Judge Thurgood Marshall, now Mr. Justice Marshall. Although the views above set forth appear in a dissenting opinion no opposing views appear in the majority opinion in *Cichos,* which disposed of the case as now explained. Based on a construction of the Indiana statutes by the highest court of the State the Supreme Court concluded that the question whether the Double Jeopardy Clause of the Fifth Amendment applied to the States under the Due Process Clause of the Fourteenth Amendment, to consider which the Court had issued its writ, was not reached. The Court accordingly dismissed the writ as having been improvidently granted.

The prejudice pointed out by Mr. Justice Fortas arose from the second prosecution of a person for a crime carrying a more serious penalty than the crime the dissenting Justices considered was the only one for which he could then be prosecuted.[3]

In the *Hetenyi* case cited with approval by Mr. Justice Fortas, the appellant, as in our case, had erroneously been tried for a capital offense—there first degree murder—though he was by then triable for no greater offense than second degree murder—a non-capital offense. Notwithstanding the fact that the jury rendered a verdict of guilty only of second degree, for which he was properly triable, the court, pointing out that in determining whether submission to the jury of the greater offense was constitutional error the standard to be followed was "reasonable possibility of prejudice," found prejudice and set aside

the conviction of second degree. The court said in part:

> [I]t is entirely possible that without the inclusion of the first degree murder charge, the jury, reflecting a not unfamiliar desire to compromise might have returned a guilty verdict on the first degree manslaughter charge on the same evidence. There is, of course, no basis for predicting with any confidence, that this would have been the outcome of the third trial if Hetenyi had not been reprosecuted for first degree murder; but neither is there any basis for predicting, with any confidence, that this would not have been the outcome. To make this latter prediction on the basis of the sufficiency of the evidence would be to ignore reality and, in effect, to have judges make the choice entrusted to the jury.

348 F.2d at 866.

The opinion of my brethren seeks to fortify their position by quoting from *Hetenyi* as follows, "We are not suggesting that whenever * * * a greater charge is improperly submitted to the jury the trial is rendered constitutionally inadequate." *Ibid.* We are not here concerned with the constitutional inadequacy of the instruction. In *Hetenyi* the Court was so concerned; for the Court of Appeals was passing upon the validity of a State conviction collaterally attacked on federal constitutional grounds. In finding prejudice of constitutional proportions in the circumstances of the case the court refrained from laying down a broad constitutional rule for all cases. This restraint does not afford support to the position of my brethren; for if in *Hetenyi* constitutional error of a character to avoid the

3. In his first trial Cichos had been tried for two related offenses, carrying different penalties, and had been convicted of the offense with the lesser penalty. This conviction was then reversed. The State then retried Cichos on both counts, again securing a conviction only on the lesser charge. Following his second conviction, the defendant appealed on the ground that he had been improperly deprived of his right to be free from double jeopardy since he had been tried a second time for the greater offense, although convicted both times only of the lesser crime. The Supreme Court of Indiana affirmed on the ground that, since the elements of the two crimes were identical, the jury's silence on the greater charge was not an acquittal but simply an election not to impose the more severe penalty.

conviction on collateral attack was found, reversible error more clearly appears when, as in our cases, we are called upon to consider the matter on direct appeal. My brethren of the majority resort to no reasoning to meet the rationale of the Fortas and Marshall opinions. They merely say the jury was impartial. On the issue of prejudice in the erroneous instructions after the jury has been properly impanelled, the impartiality of the jury is irrelevant.

There was a very substantial question in these cases whether defendants were guilty of the crime of carnal knowledge or only of assault with intent to commit that offense. Recognizing this the trial court quite properly submitted to the jury the issue of assault with intent to commit carnal knowledge as a lesser included offense. Had the charge respecting the death sentence not also been given the jury might have found only the lesser included offense, as the court pointed out in *Hetenyi* the verdict there might have been manslaughter instead of second degree murder.

As a rational matter it can hardly be denied that the instruction not only possibly but quite likely prejudiced the case of defendants. Any indecision within the jury is frequently likely to be resolved by reaching a verdict somewhere between non-guilt and guilt of the most serious possible offense. Whenever the court gives the jury the option of returning a more serious verdict than is permissible, then it improperly expands the jury's latitude with the result that any verdict reached is likely to be more serious than if the jury's consideration had been properly restricted. The more serious the crime the greater the likelihood of prejudice. In a case such as this where the evidence was strong that some sexual offense was either committed or attempted, the instruction that the death penalty was available to the jury would tend to influence them toward rendering a verdict of guilt of carnal knowledge but without the death penalty. Such a verdict is comparable to what Mr. Justice Fortas referred to as the less serious verdict to which the jury would resort rather than to continue the debate over whether in these cases defendants were guilty of carnal knowledge or attempt to commit that offense.

I would reverse and remand for a new trial with the statute limited now as it must be by *Jackson,* thus precluding an erroneous instruction authorizing the jury to render a verdict of guilty with the death penalty.

I would also reverse because of the denial of the motion for a new trial based on newly discovered evidence growing out of the testimony of the complaining witness and her mother when they later testified in a related case in the Juvenile Court. Their subsequent testimony created significant discrepancies with their testimony in these cases, especially on the question whether carnal knowledge or an attempt to commit that crime was the proper verdict on the evidence. Since the court affirms I need not go into this in more detail. For the same reason I need not discuss other phases of the case.