CAFASSO v. PENNSYLVANIA R. CO.

No. 9557.

Circuit Court of Appeals
Third Circuit.

Argued March 5, 1948.
Decided Aug. 12, 1948.

B. Nathaniel Richter, of Philadelphia, Pa. (Richter, Lord & Farage, of Philadelphia, Pa., on the brief), for appellant.

Theodore Voorhees, of Philadelphia, Pa. (J. Peter Williams and Barnes, Dechert, Price, Smith & Clark, all of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, MARIS and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from a judgment for the defendant, Pennsylvania Railroad Company, entered on the verdict of a jury in an action brought under the Federal Employers' Liability Act[1] and the Safety Appliance Act[2] in the District Court for the Eastern District of Pennsylvania by the plaintiff, Clement A. Cafasso, a laborer employed by the Pennsylvania Railroad Company at its Altoona shops.

The plaintiff testified at the trial that on March 27, 1945, while raking and cleaning the grounds about the test department, two fellow-employees, Mazza and Lepore, asked him to help them carry an eight foot rail weighing about 300 pounds to the "drop test", a distance of about 5 or 6 feet. The plaintiff said that with the consent of his boss, Burk, he agreed to assist them. Mazza and Lepore raised the front part of the rail by means of a pair of tongs, each holding one handle of the tongs, while plaintiff carried the back end by hand. The plaintiff asserted that when they reached the testing base Mazza and Lepore suddenly and without warning dropped the rail leaving him bearing its entire weight. The plaintiff stated that he felt a "tearing sensation" in his back when they dropped the front end, that then he was told to push the rail a bit, and that when he tried to straighten up he felt severe pain in his back. He was taken to the Altoona Hospital. His testimony was that the pain caused him such discomfort that he has required treatment for an extended period of time and has been unable to return to his regular duties although he did try to perform light duties and to operate a taxicab for a short period. The plaintiff's medical testimony tended to establish that he was suffering from a herniated intervertebral disc. The defendant's evidence, on the other hand, was to the effect that the plaintiff was not authorized to carry the rail, that neither Mazza nor Lepore were the men who carried the rail that morning, and that the plaintiff did not state after the occurrence of the accident that his injury resulted from the sudden dropping of the rail but that he was injured when he pushed the rail. The defendant's medical testimony indicated that plaintiff did not have a herniated disc.

The trial judge submitted to the jury the issue of the plaintiff's claim for damages for the injuries received as a result of the alleged negligence of employees of the defendant company. The trial judge also submitted to the jury written interrogatories as to whether the defendant company, through any of its officers, agents, servants or employees, other than the plaintiff, was negligent, and as to whether the plaintiff was guilty of any

---

negligence. In response to the interrogatories the jury reported that the defendant company was not negligent and that the plaintiff was guilty of negligence. It accordingly returned a general verdict for the defendant. From the judgment entered on the verdict the plaintiff appeals.

In support of his appeal the plaintiff asserts that the trial judge erred in the conduct of the trial in four particulars: (1) in that he admitted into evidence a statement of the witness, Mazza; (2) in that he did not submit to the jury all of the plaintiff's theories of negligence; (3) in that he refused to allow the plaintiff to prove that the general practice of the defendant company was to retain original long-hand statements of injured employees; and (4) in that he sustained the defendant's objection to the plaintiff's summation criticizing the defendant's failure to call a physician, Dr. Abraham Ornsteen, as a witness. We will proceed to consider each of these alleged errors.

The plaintiff's first contention is that the admission into evidence of a statement given by the witness, Mazza, to the defendant was error. Mazza was one of the plaintiff's co-employees who, the plaintiff alleged, requested his assistance in carrying the rail and who dropped it without warning. Mazza, when called as a witness by the defendant, denied that he was in the test department on the day the accident occurred or that he was the person who pulled the rail. On cross-examination Mazza was asked whether he knew the plaintiff and he admitted that he did. Thereupon the plaintiff confronted him with a statement which he had made to the defendant company in which he stated that he did not know the plaintiff. Upon further cross-examination he admitted that he signed the statement without knowing what was in it. The trial judge, over the plaintiff's objection, permitted the defendant's counsel to read the entire statement to Mazza and elicit his responses to each of the assertions of fact contained therein. Each of the assertions contained in the statement thus read to the witness, except the statement that he did not know the plaintiff, was entirely consistent with the witness's testimony at the trial.

The plaintiff nonetheless argues that the remainder of the statement was wholly inadmissible because of the witness's testimony that he did not know what was in it and because, in any event, it did not relate to the matter involved in the cross-examination. We see no merit in the first reason in view of the witness's admission that he signed the statement. Whether he actually did know its contents when he signed it was for the jury to determine. Nor is there merit in the plaintiff's second reason. It is true as a general rule that a prior consistent statement is not admissible to confirm a witness's testimony even though that testimony has been impeached by evidence of a prior inconsistent statement. Wigmore on Evidence, 3d Ed., Vol. IV, § 1126. But the rule is subject to the exception "that if some portions of a statement made by a witness are used on cross-examination to impeach him, other portions of the statement which are relevant to the subject matter about which he was cross-examined may be introduced in evidence to meet the force of the impeachment." Affronti v. United States, 8 Cir., 1944, 145 F.2d 3, 7. As is pointed out in the case just cited, the question of the admission of the consistent portion of such a statement is addressed to the sound discretion of the trial judge which, however, is to be exercised with caution and only for the purpose of enabling the jury to make a correct appraisal of the credibility of the witness who has been impeached.

In the present case it appears to us that the consistent portions of the statement in question did relate to the subject matter of the witness's cross-examination. Moreover, as counsel for both parties agreed at our bar, the witness Mazza was illiterate, highly nervous and at times almost incoherent. His testimony was elicited with the greatest of difficulty. It was partly because of this fact that the trial judge permitted the defendant's counsel to examine Mazza upon the consistent portions of the prior statement which he had signed. This, we think, was also within the wide discretion of the trial judge in regulating the examination of witnesses so as to expedite the trial, elicit the truth and fur-

ther justice. London Guarantee & Accident Co. v. Woelfle, 8 Cir., 1936, 83 F.2d 325, 334. We conclude that the trial judge did not abuse his discretion with respect to the statement of the witness, Mazza.

■ The plaintiff's second contention is that the trial judge erred in failing to submit to the jury all his theories of negligence. There is no merit whatever in this point. The trial judge in his charge did submit to the jury the theory of negligence upon which the case was presented by the plaintiff. The plaintiff made no request to the trial judge to instruct the jury with respect to any other theory nor did he object to the failure of the trial judge to give such instructions. Accordingly Federal Rules of Civil Procedure, rule 51, 28 U.S.C.A. following section 723c, precludes him in this court from assigning such failure as error. .

■ The plaintiff's third contention is that the trial judge erred in refusing to allow him to prove that the general practice of the defendant company was to retain the original handwritten statements of injured employees rather than to destroy them after a typewritten copy was made. Upon cross-examination the plaintiff testified that he told one Gramley, an assistant foreman under whom he worked, that his injury resulted from the dropping of the rail by the two men. Counsel for the defendant asked the plaintiff to identify a statement which he had made to Gramley after the accident. After reading this statement the plaintiff asserted that it was not complete because he had told Gramley and his clerk, who took his statement down in longhand, that he felt pain when the rail was dropped, and this was not included in the typewritten copy of the statement which he was then reading in court. He testified that the clerk asked him to sign the handwritten notes which she made at the time his statement was given in the hospital and that when she returned the next day with a typewritten copy of the statement he signed it without reading. Counsel for the plaintiff then demanded that the defendant produce the alleged original handwritten signed statement. Counsel for the defendant denied knowl-

edge of the handwritten notes and the clerk who made them subsequently testified that they had not been preserved. Thereupon, counsel for the plaintiff sought to introduce evidence to prove that it was customary for the defendant company to obtain a signed handwritten statement from an injured employee and to retain it in its files as well as the subsequently signed typewritten copy.

There is no question that the prior statement made by the plaintiff was properly admitted as inconsistent with his testimony and, therefore, relevant on the issue of his credibility. But the admission of evidence that it was customary for the defendant company to retain the handwritten copies as well as the typewritten copies of statements signed by injured employees would have taken the jury far afield from the issue which was before them. Whether the defendant company did have such a custom would have required the jury to consider an issue which was wholly collateral to the issue before them. The extent to which the parties may go into collateral issues is a matter within the sound discretion of the trial judge. New England Trust Co. v. Farr, 1 Cir., 1932, 57 F.2d 103, 110; Golden Reward Min. Co. v. Buxton Min. Co., 8 Cir., 1899, 97 F. 413, 416. We are satisfied that the trial judge did not abuse his discretion in this instance and that the exclusion of this evidence was not error.

Several times during the trial, it was quite obvious that the plaintiff was anxious to get into evidence the report which Dr. Abraham Ornsteen had made following his examination of the plaintiff at the request of the defendant. Dr. Ornsteen was not called as a witness by either party although he was available and counsel for plaintiff had issued a subpoena for him. In his argument to the jury, counsel for the plaintiff called to its attention the fact that Dr. Ornsteen had not been called by the defendant. The court reporter did not take down the arguments of counsel to the jury so that counsel's exact words are not before us. In his brief, however, he states that he suggested to the jury that it could conclude from the fact that Dr. Ornsteen

had not been called that if he had been called he would have said that the plaintiff had a herniated disc. The trial judge sustained the defendant's objection to this argument in the following language:

"Members of the jury, neither Dr. Hall nor Dr. Ornsteen was here. I did hear the remarks earlier about Dr. Ornsteen. It was the privilege of either or both sides to call either or both of these doctors, and the fact that they are not here cannot be held against either side. We are only to take the testimony that was presented here from the witness stand."

In making his fourth and final point the plaintiff asserts that this comment by the trial judge was such that it led the jury to believe that it should infer from the plaintiff's failure to call Dr. Ornsteen that he would say that the plaintiff did not have a herniated disc. This contention is wholly lacking in merit. See Delaware & Hudson Co. v. Nahas, 3 Cir., 1926, 14 F.2d 56, 60. Nothing in the trial judge's remarks could have suggested such an inference.

We think that the plaintiff's quarrel in this case is really with the jury's verdict. But the verdict, based as it was on conflicting evidence, is not open to review. The case thus affords another cogent illustration of the inadequacy of the Federal Employers' Liability Act to assure protection to employees injured in the service of the railroads. So long as proof of negligence on the part of the officers, agents or employees of the employing railroad is made the sine qua non for recovery, cases such as this will arise in which a railroad employee seriously injured in the course of his work receives no compensation whatever under the federal law while other employees similarly injured receive at the hands of other juries liberal awards of damages. It is, however, not within the power of the courts to give relief from this unfortunate situation, in which the compensation received by injured railroad workers, and especially its amount, ofttimes becomes little less than fortuitous. For such relief can come only through the enactment by the Congress of a modern compensation law for the protection of these workers.

The judgment of the district court will be affirmed.