Samuel M. HUGHES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16388.

United States Court of Appeals District of Columbia Circuit.

Argued June 12, 1962.

Decided June 28, 1962.

288

Mr. Edgar T. Bellinger, Washington, D. C. (appointed by this court) for appellant.

Mr. Judah Best, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty., were on the brief, for appellee.

Before BASTIAN, BURGER and WRIGHT, Circuit Judges.

BURGER, Circuit Judge.

Appellant was found guilty of rape, housebreaking and larceny and on appeal he urges (1) error in receipt of oral and written confessions, (2) error in failure to submit issue of voluntariness of confessions, (3) lack of corroboration as to rape, (4) coerciveness of charge to jury, (5) error in permitting a psychiatrist to examine appellant at request of the United States Attorney shortly after his preliminary hearing and before he had counsel and (6) that the weight of evidence compelled an "insanity" acquittal.

The complaining witness was not able to identify appellant as the attacker who, according to her testimony, entered her home in the dark early morning hours and threatened to cut her throat with a knife and to strangle her nine year old daughter if she resisted or made any outcry. Fingerprints on the impressible surface of a recently painted screen window frame were found. The attacker had entered the house by a screen window left unlocked while paint was drying; all doors were locked. Twenty-two dollars were stolen. Prompt complaint of the housebreaking and attack was made to the police. No visible bruises or scratches were found on the complainant who said she neither cried out nor resisted because of the threat to kill her daughter sleeping in the same room.

Near midnight on May 25 the fingerprints obtained from the window frame were reported by the Federal Bureau of Investigation to the police as matching those of appellant which were on file, and at about 2:25 a. m., May 26, police arrested him at his home without a warrant. A police detective testified he warned appellant shortly thereafter that anything he said could be used against him in evidence. Within 30 minutes after reaching the police station, or at approximately 3:25 a. m. appellant told police "I did it * * * I broke into the lady's house and took her money." He then described the rooms, the purse and stated the amount of cash taken was about $20 in bills. He denied the rape. By 4:05 a. m. the confession was typed, read to him and signed; he made some changes in longhand. Between 5:00 and 5:30 a. m. the complainant was brought to the station to confront appellant who apologized for entering the house and taking the money but denied any attack. At 10:00 a. m. appellant was taken before the United States Commissioner for preliminary hearing under Rule 5. Several weeks later, after indictment he was interviewed for purposes of a psychiatric examination by a psychiatrist acting on the request of the United States Attorney.

Thereafter on his counsel's motion appellant was sent to St. Elizabeths Hospital on July 14 for mental examination under D.C.Code Ann. § 24–301 (1961).

■ (1) The oral admissions and the written confession implementing them were plainly admissible as threshold confessions under Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) and under our holdings in Metoyer v. United States, 102 U.S.App. D.C. 62, 250 F.2d 30 (1957) and the more recent case of Turberville v. United States, 112 U.S.App.D.C. 400, 303 F.2d 411, cert. denied, 82 S.Ct. 1607, where we said no unnecessary delay occurs where

"a defendant is arrested, brought to police headquarters around midnight, begins to make a statement

within thirty minutes thereafter, and is then taken before a magistrate at 10 a. m. the same morning."

See also Sawyer v. United States, 112 U.S.App.D.C. 381, 303 F.2d 392.

■ (2) No evidence was proffered on lack of voluntariness of the confession. The only challenge to the confession was made under Rule 5(a), Fed.R. Crim.P., 18 U.S.C.A., because of alleged delay and we have disposed of that contention. His request, made after the charge had been given, was for an instruction that "if the jury found appellant to be of unsound mind, they should disregard the confession." There was no evidence, medical or otherwise, directed at whether appellant lacked mental competence to make a confession. Moreover, the jury rejected the claim of "insanity." It should also be noted that appellant's own expert testimony disclosed that his alleged psychoneurotic tendency, "peeping tomism," would not explain his entry into the house *for larceny.* Hence his own evidence demonstrated that his compulsive neurotic tendencies were of a very limited nature and there was no suggestion that they would have any relationship to competency to make a confession of *larceny* which was all he confessed.

■ (3) The claim of no corroboration for the attack must fall. Appellant's fingerprints placed him at the scene of the crime, his disputed confession placed him there, and the complainant made prompt report to the police which is one of the most universally accepted forms of corroboration. Lyles v. United States, 20 App.D.C. 559, 563 (1902); see also Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633 (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943).

■ (4) The claim that it was reversible error to receive the testimony of Dr. Marland because he had examined appellant shortly after the preliminary hearing without an order of the District Court under 18 U.S.C. § 4244 (1958) is without merit. That statute requires such a motion only if "the United States Attorney has reasonable cause to believe that a person charged with an offense * * * may be presently insane or * * * unable to understand the proceedings * * *." It does not apply if the examination is merely for the purpose of informing the United States Attorney as to the defendant's mental condition. The United States Attorney is free to use any doctor or hospital he selects to conduct such an examination since it is not governed by statute. Cf. Edmonds v. United States, 106 U.S.App. D.C. 373, 273 F.2d 108 (1958) (second case). Dr. Marland, it should be noted, is a psychiatrist with long experience who as a member of the Mental Health Commission was intimately acquainted with examining procedures.

■ (5) Appellant did not take the stand at trial. On the issue of criminal responsibility four psychiatrists and one psychologist testified for the defense. The only "evidence" of any history of aberrant behavior came indirectly through the statements appellant made to St. Elizabeths staff psychiatrists after he was indicted for rape, housebreaking and larceny. Appellant's wife and mother were called; the wife testified that she was married to appellant and that she had two children. The mother testified that appellant was her son, that he finished three years of high school. Neither of them testified to any unusual or abnormal conduct or history of deviations from normal behavior.

The four psychiatrists and one psychologist called on behalf of appellant testified on the basis of their examinations at St. Elizabeths Hospital that appellant was suffering from psychoneurotic reaction, obsessive compulsive type, which they said was not a psychosis but was "classified" as a mental disease. One psychiatrist saw appellant 1½ hours at a staff conference, one saw him 30 minutes; as to some the length of interviews did not appear. Three said the act was a "product," two said they had no opinion on causal connection. All had access to and opportunity for study of

his files. Some said their opinions rested in large part on what appellant had related to them; others said their opinions rested entirely on what was learned from appellant. One testified appellant's mother gave him a 1958 history of one "peeping tom" incident when he was picked up by police but the mother was not asked about this when she testified nor was any police record shown. Appellant's expert testimony in general was that "his major symptoms [were] his past behavior," as related to them by appellant, and manifestations of anxiety and depression which they observed while at St. Elizabeths Hospital. These witnesses believed appellant was not malingering.

Four lay witnesses and one psychiatrist testified for the government. The expert witness called by the government testified on the basis of his early examination a few days after the alleged crime and one subsequent examination. It was his opinion appellant was "well coached," that he was not psychotic and that he was malingering. Four fellow employees of appellant at the United States Post Office Department testified in varying terms that they considered him of sound mind based on 18 months regular contact. None of them had ever observed any aberrant conduct or unusual behavior.

On this state of the evidence it was for the jury to decide whether appellant had any mental disease and whether there was a causal connection between any disease and the acts charged. The jury had a right to accept the testimony of Dr. Marland and reject that of the opposing experts who disagreed with him. This is particularly so in light of the degree to which the opinions of defense experts were dependent upon the veracity of appellant who did not take the stand. Moreover the jury could not have failed to note the highly speculative quality of the opinions of the defense experts, their fragile evidentiary basis, the brevity of their conferences with appellant, and the fact that their examinations were made five months after the alleged criminal acts. Nor would the jury fail to note that his fellow employees, his wife and his mother related not a single incident to abnormal behavior. On this record they may have concluded, as Dr. Marland suggested, that appellant had been "well coached" by someone or that questions of the battery of psychiatrists had given him sufficient cues to fabricate the story which he related to them.

We find no error.

Affirmed.