Robert CALHOUN, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

Calvin FIELDS, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 21119, 21120.

United States Court of Appeals
District of Columbia Circuit.

Argued May 22, 1968.

Decided Aug. 9, 1968.

Petition for Rehearing Denied
Sept. 11, 1968.

Mr. Bernard I. Nordlinger, Washington, D. C. (appointed by this court), for appellants.

Mr. Roger E. Zuckerman, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. John A. Terry, Asst. U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, BASTIAN, Senior Circuit Judge, and McGOWAN, Circuit Judge.

BASTIAN, Senior Circuit Judge.

Appellants, Robert Calhoun, Jr. and Calvin Fields, are before this court, appealing their convictions under an indictment filed June 27, 1966, charging rape, sodomy, and aiding and abetting each other in the commission of these acts. Both received sentences on all counts. Field's sentence was 4 to 10 years on counts one and two, and 3 to 10 years on counts three and four. Calhoun was sentenced for a period not to exceed 10 years under the Federal Youth Corrections Act.

Appellants rely upon five allegations of error: mention of "the missing witness" rule by the court in its instructions to the jury, and the court's permission to the prosecution to utilize the same rule in argument; identification of Calhoun as insufficient and not corroborated; insufficient evidence and corroboration that either appellant committed sodomy; insufficient evidence that each appellant aided and abetted the other; and that the instructions of the trial judge were unclear and confusing on the issues of identification, corroboration, and aiding and abetting. Because the concurrent sentences bring into operation FED.R.CRIM.P. 52(a) and the interrelationship of some of the counts, these allegations of error are susceptible of pruning for our decisional purposes.

At the outset, we find sufficient evidence present to sustain the rape conviction of appellant Fields. He, known throughout the trial as the one named "Seymour," was present, by his own admission, from the very beginning of the complicated and bizarre sequence of events culminating in the multiple violations of the victim, these events consuming approximately an hour and a half to two hours. Furthermore, when arrested nearby, appellant Fields was breathing hard and perspiring heavily, as if he had just been running; and there were wet spots on the fly of his trousers and grass stains on the knees. This does not exhaust the evidence presented against appellant Fields, but we consider it unnecessary to catalogue here all of the details, for it is apparent from the transcript of the trial that the evidence is overwhelming.

The efficacy of appellants' arguments of insufficient evidence and corroboration to convict for sodomy and

aiding and abetting is vitiated by the concurrent sentences. Much the same may be said about the final allegation of error, that the trial judge's instructions as to the issues of identification, corroboration, and aiding and abetting were unclear and misleading. Additionally, whatever possible confusion the instructions may have engendered in the minds of the jury, or whether the jury actually was confused, could have no effect upon the conviction of appellant Fields, the evidence against him being so incriminating. Only the argument of insufficiency of evidence and corroboration necessary to sustain the rape conviction of appellant Calhoun gives us pause.

■ The law in the District of Columbia has long required corroboration of identity, as well as proof of the *corpus delicti* to sustain conviction for rape. In Kidwell v. United States, 38 App.D.C. 566, at page 573 (1912), our predecessors wrote:

> We are aware that a conviction for this offense will be sustained upon the testimony of the injured party alone. But where the courts have so held, the circumstances surrounding the parties at the time were such as to point to the probable guilt of the accused, or, at least, corroborate indirectly the testimony of the prosecutrix.

When asked to overrule *Kidwell* in Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633 (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943), this court expressly declined to do so, writing:

> "Appellant's argument in terms requests that we 'inquire again into the whole theory of the necessity of corroboration' and, in effect, reverse the rule stated in the Kidwell case, substituting one which requires 'direct corroboration of the prosecutrix.' If by 'direct corroboration' is meant the testimony of an eyewitness, the result would be in most cases that conviction

could not be had except upon the defendant's confession. If it means less than that, it is hard to see how it could relate to anything other than circumstantial evidence which supports the prosecutrix' story, and this is what the Kidwell case requires. Lord Hale's aphorism concerning these accusations still is valid and for that reason, as the Kidwell case declares, 'it is the duty of the court to carefully safeguard the defendant at every stage of the proceeding, and secure to him a trial legal in all respects.' Hence corroboration, in the sense that there must be circumstances in proof which tend to support the prosecutrix' story, is required, and for lack of it Kidwell's conviction for one offense was reversed." 77 U.S. App.D.C. at 17, 135 F.2d at 636.

Thus, with *Ewing* firmly establishing *Kidwell* as the ruling case law of this jurisdiction,[1] the question has become one of application, that is, giving effect to the required corroboration of identity.

■ How to apply the tenets of *Kidwell* is what faces us here. Needless to say, as the cases subsequent to *Kidwell* and *Ewing* have demonstrated, this chore has proven somewhat vexatious, as to both the degree and the kind of corroborative evidence required. Such vexatiousness springs from the very nature of appellate review. The price paid for detachment is the confinement to the written record and loss of the opportunity to observe the demeanor of the litigants and witnesses. So to obviate, as much as possible, the danger of simply substituting our subjective view of the evidence for the view of the trial court and jury: "[I]f the evidence reasonably permits a verdict of acquittal or a verdict of guilt, the decision is for the jury to make. In such case, an appellate court cannot disturb the judgment of the jury." Curley v. United States, 81 U.S.App.D.C. 389, at 397, 160 F.2d 229,

---

1. That circumstantial corroborative evidence satisfied the rule was reaffirmed

in McGuinn v. United States, 89 U.S. App.D.C. 197, 191 F.2d 477 (1951).

at 237, cert. denied, 331 U.S. 837, 67 S. Ct. 1511, 91 L.Ed. 1850 (1947).

The evidence adduced at trial shows that the prosecutrix had ample opportunity to observe Calhoun's features practically face to face. She unhesitatingly identified him shortly after the gang attacks and again in the courtroom. Appellant attempts to discredit her power to observe by arguing that it was too dark to see on the playground. But testimony from two investigating police officers and from a man living nearby who heard the victim's screams established the presence of sufficient light to recognize facial features from at least ten to twelve feet.

The identification of Calhoun very shortly after the assaults is discounted by appellant on the ground that the victim was only nineteen years old, had just endured a stirring emotional experience, and was undoubtedly hysterical. While appellant's description of the victim's physical condition is likely true, the entire sequence of events surrounding her identification of Calhoun discloses little, if any, effect upon her observational and recollective powers.

First, three suspects, including Calhoun, were returned to the scene. The prosecutrix demonstrated sufficient presence of mind to state that she could not recognize one of the three, who was later released. Second, the police officer who arrested Calhoun, an experienced sex squad detective, kept him out of the victim's sight until he had elicited a description from her. She again said that the "ringleader" was dark skinned and wore a fishnet shirt. Thereupon, Calhoun was brought before her and she spontaneously and unequivocally identified him as the "ringleader" who had raped her. Third, when arrested about two blocks from the scene of the crime, Calhoun was indeed wearing a fishnet shirt. The arresting officer's attention was drawn to Calhoun just prior to the arrest because he was "trotting at a fair pace", out of breath, and sweating profusely. Later, inspection revealed grass stains on his trouser knees. Analysis in the F.B.I. laboratory revealed seminal stains on Calhoun's trousers, although these stains were of indeterminate age.

Besides what has already been mentioned, Calhoun's defense was one of alibi. His denial of being at the scene was supported by testimony from appellant Fields. The prosecutrix testified quite candidly that there was no apparent recognition between Fields and Calhoun during the commission of the crime. Calhoun attributed the grass stains on the knees of his trousers to his job as a caddy at a local country club. It was also brought out during the trial that the prosecutrix was or had been suffering from a venereal disease, which she admitted. Dispute arose whether or not her disease was in remission. With all of these facts before them, the jury convicted appellant Calhoun.

We are now asked to decide whether or not the corroboration of identity was sufficient to enable a reasonable mind to fairly conclude guilt beyond a reasonable doubt. In order to do so we must weigh the evidence in this case against the measuring rod of *Kidwell* and *Ewing* and their progeny. Supporting his contention of insufficient corroboration, appellant cites the following cases: Franklin v. United States, 117 U.S.App.D.C. 331, 330 F.2d 205 (1964); Walker v. United States, 96 U.S.App.D.C. 148, 223 F.2d 613 (1955); Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39 (1954). Appellant also refers us to Roberts v. United States, 109 U.S.App.D.C. 75, 284 F.2d 209 (1960); Larkin v. United States, 108 U.S.App.D.C. 239, 281 F.2d 72 (1960); Farrar v. United States, 107 U.S.App.D.C. 204, 275 F.2d 868 (1959).

We have carefully examined all of the cases cited to us by appellant and found them all to be outside of the *Kidwell-Ewing* wake. Appellant's view of the degree of corroboration of the identity necessary to send a case to the jury is not consonant with the case law in this jurisdiction. This court, in the recent case of Thomas v. United States, 128 U.

S.App.D.C. 233, 387 F.2d 191 (1967) affirmed a conviction for carnal knowledge based principally upon identification by the fifteen-year-old victim coupled with her description of her attacker as wearing a red checkered shirt. As in the present case, the assault took place at night on a playground. The identification of Thomas, however, was not made shortly after the crime, but the next day. In addition to the factual similarities, the court in *Thomas* makes some observations appropriate here:

> "The need for corroboration depends upon the danger of falsification. The 'danger of an erroneous identification in a rape case is not of the same magnitude as the danger of a fabricated rape.' And where, as here, (1) there is no dispute that a rape in fact occurred, (2) consent is not an issue, and (3) there is no evidence undermining the trustworthiness of the complaining witness, her identification 'based on adequate opportunity to observe' may need no further corroboration.

> "This is not a case where the prosecutrix admittedly was unable to see the accused's face fully during the assault and was uncertain at the time she made the original identification. Nor is it a case where the victim's original description of her assailant did not fit the man whom she subsequently identified on a street corner while she was being driven by the police through certain neighborhoods in a random search for her attacker." [Footnotes omitted] [387 F.2d at 192]

While we feel the *Thomas* case adequately supports our affirmance of Calhoun's conviction, we need not stop there. For example, see the following cases: Coleman v. United States, 125 U.S.App.D.C. 246, 371 F.2d 343 (1966); Clemons v. United States, 114 U.S.App.D.C. 273, 314 F.2d 278 (1963); Hughes v. United States, 113 U.S.App.D.C. 127, 306 F.2d 287 (1962).

Affirmed.