Phillip **COLTRANE**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21843.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 8, 1968.

Decided May 23, 1969.

Petition for Rehearing Denied
Oct. 10, 1969.

Burger, Circuit Judge, dissented.

Mrs. Jean F. Dwyer, Washington, D. C. (appointed by this court), for appellant.

Mr. David A. Clarke, Jr., Special Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, and Theodore Wieseman, Asst. U. S. Atty., were on the brief, for appellee.

Before BURGER, TAMM and ROBINSON, Circuit Judges.

**SPOTTSWOOD W. ROBINSON, III,** Circuit Judge:

A jury in the District Court found appellant guilty on all charges preferred by an indictment in four counts of taking indecent liberties with a child [1] and three counts of sodomy [2] with the same child. He was sentenced to terms of imprisonment of from two to ten years on each of the sodomy counts, and from two to eight years on each of the others, all terms to be served concurrently. He attacks the conviction on the grounds that the child-complainant's testimony was not corroborated sufficiently to authorize conviction on any of the counts, and that the Government was improperly permitted to rehabilitate the complainant as a prosecution witness by use of a pretrial statement he had given to the police. We sustain each contention partially, and reverse appellant's conviction.

**I**

On the night of January 23, 1967, the complainant, a 15-year old boy, and a neighbor were approached by appellant, who inquired as to whether someone could call at his house for some photographs he had made for the neighbor's 17-year old son. The complainant had some previous acquaintance with appellant, and at the neighbor's request accompanied appellant to the house. There, said the complainant at trial, he was taken to a bedroom and shown pornographic pictures for several minutes before he rejoined the neighbor with the picked-up photographs.

The complainant then testified to a series of bizarre events, allegedly transpiring in appellant's bedroom during the next four days, on which the charges specified in the indictment were predicated. On the nights of January 24 through 27, the complainant declared, he

---

1. D.C.Code § 22–3501(a) (1967 ed.). This offense is charged in counts 1, 3, 5 and 7 of the indictment.

2. D.C.Code § 22–3502 (1967 ed.). This offense is charged in counts 2, 4 and 6 of the indictment.

visited appellant at the latter's invitation[3] and they engaged in homosexual activities.[4] In substance, the complainant avowed, on January 24 and 25, appellant committed oral sodomy;[5] on January 26, appellant performed an act of rectal sodomy with the aid of a lubricant described as Vaseline;[6] and on January 27, appellant rubbed their sexual organs together.[7] The indictment characterizes each night's activities as separate instances of taking indecent liberties with the complainant, and those of the first three nights as sodomy.

The pretense for one of appellant's invitations to visit, the complainant continued, was appellant's offer to make photographs of the complainant. On January 25 and 26, in appellant's basement darkroom, the complainant added, appellant took pictures, developed them, and later gave them to him, apparently on his visit on January 27. Two photographs, ordinary head views, were introduced into evidence at the trial.

Indisputably, shortly after the dates to which the complainant referred, he began to suffer from the first symptoms of what soon turned out to be a venereal disease. This came to light on February 3, when his mother noticed a bloody discharge on his underwear. Taken to a hospital on February 4, it was discovered that he had an advanced case of gonorrhea. He refused to tell the doctor or his mother how he contracted it, but apparently implicated appellant in conversation with a friend. The mother testified that on February 5 she was first informed that appellant was the source of the disease by someone other than her son, presumably one of his friends. On the next day, the complainant and his mother went to the police, to whom he gave a statement.

A police officer, called by the Government, testified to the results of a search on February 6, authorized by a warrant, of appellant's bedroom and darkroom. In a wastepaper basket in the bedroom, they found an empty Vaseline jar, which the complainant said resembled the one appellant had on January 26. The search failed, however, to turn up either pornographic photographs or negatives of the pictures appellant is said to have made of the complainant. The officer's descriptions of the bedroom and darkroom coincided generally with the descriptions the complainant had previously given from the witness stand.

On February 9, appellant surrendered to the police and was immediately taken to a hospital, where an examination revealed that he did not have gonorrhea. A stipulation at the trial regarding the medical aspects of the disease elucidated its relevant characteristics.[8] It can be contracted only by sexual contact with another person. More usually it is communicated through intercourse between persons of opposite sex, but it can be transmitted from male to male through contact of the sexual organs when one is in a state of suppurative discharge. The first symptoms appear after 48 hours, an advanced stage is reached within five days, and a cure by penicillin takes from one to seven days, depending upon the severity of the case.

The complainant's neighbor gave testimony buttressing the complainant's as to

---

3. On one of these occasions, the complainant admittedly lied to his mother as to where he was going.

4. The evidence also indicates that, on some or all of these occasions, persons other than appellant were in the house when the complainant was there.

5. The complainant testified that on January 24, as on January 23, appellant showed him indecent pictures.

6. The complainant first described the lubricant as Vitalis, but promptly identified an empty Vaseline jar as the container the same or similar to that which he had seen.

7. The complainant said that, at the time, there was an exudation from appellant's organ of a substance which he did not know, but which appellant said was only grease.

8. The stipulation was of the testimony a physician would have given if called as a witness. The stipulated testimony was wholly uncontradicted.

the circumstances under which he accompanied appellant to the latter's home on January 23. The neighbor's son related that about a month previously he had been in appellant's bedroom to give him some snapshots to enlarge, and was then shown pornographic photographs. His description of the photographs and the place from which appellant took them matched what the complainant had said in those respects.

Appellant's trial strategy not unnaturally included a strenuous effort toward impeachment of the complainant. On cross-examination, defense counsel brought out inconsistencies within the complainant's testimony at trial, and between that testimony and his statements at appellant's preliminary hearing and to the police on February 6.[9] It was in response to that exhibition that the Government, on redirect examination, introduced in its entirety the complainant's February 6 statement to the police in an attempt to rehabilitate its star witness.

At the close of the Government's case in chief, appellant moved for a judgment of acquittal and, after the court denied the motion,[10] sought to develop an alibi. A night school teacher testified that appellant was in a barbering class on the first three evenings at the times when the offenses specified in the first six counts of the indictment are supposed to have been committed. He also identified attendance records, allegedly made at the time by him in the ordinary course of the school's business,[11] that supported his testimony on that score. The jury, however, as we have indicated, accepted the Government's version, and returned verdicts of guilty on each of the seven counts.

## II

In a long line of decisions,[12] we have consistently held that corroboration of the testimony of complainants in so-called "sex cases"[13] is indispensably prerequisite to conviction, and for the cogent reason that for these offenses the risk of unjust conviction is high.[14] We know from the lessons of the past that

---

9. The contradictions were minor in character, and related only to the circumstances surrounding the offenses on trial and not to the alleged criminal transactions themselves.

10. The motion was renewed, and again denied, after all of the evidence was in.

11. See 28 U.S.C. § 1732 (1964).

12. Allison v. United States, 133 U.S.App.D.C. 159, 162, 409 F.2d 445, 448 (1969); Bailey v. United States, 132 U.S.App.D.C. 82, 87, 405 F.2d 1352, 1357 (1968); Borum v. United States, 133 U.S.App.D.C. 147, 152, 409 F.2d 433, 438 (1967) cert. denied 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); Calhoun v. United States, 130 U.S.App.D.C. 266, 268, 399 F.2d 999, 1001 (1968); Thomas v. United States, 128 U.S.App.D.C. 233, 234, 387 F.2d 191, 192 (1967); Franklin v. United States, 117 U.S.App.D.C. 331, 334–335, 330 F.2d 205, 208–209 (1964); Roberts v. United States, 109 U.S.App.D.C. 75, 77, 284 F.2d 209, 211 (1960), cert. denied 368 U.S. 863, 82 S.Ct. 109, 7 L.Ed.2d 60 (1961); Wilson v. United States, 106 U.S.App.D.C. 226, 227, 271 F.2d 492, 493 (1959); Walker v. United States, 96 U.S.App.D.C. 148, 152, 223 F.

2d 613, 617 (1955); Miller v. United States, 93 U.S.App.D.C. 76, 78, 207 F.2d 33, 35 (1953); Kelly v. United States, 90 U.S.App.D.C. 125, 129–130, 194 F.2d 150, 154–155 (1952); McGuinn v. United States, 89 U.S.App.D.C. 197, 198, 191 F.2d 477, 478 (1951); Ewing v. United States, 77 U.S.App.D.C. 14, 16–17, 135 F.2d 633, 635–636 (1942), cert. denied 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943); Kidwell v. United States, 38 App.D.C. 566, 573 (1912). See also Hughes v. United States, 113 U.S.App.D.C. 127, 129, 306 F.2d 287, 289 (1962); Lyles v. United States, 20 App.D.C. 559 (1902).

13. Included within this category are rape, e. g., Borum v. United States, supra note 12; carnal knowledge, e. g., Bailey v. United States, supra note 12; assault with intent to commit rape or carnal knowledge, e. g., Allison v. United States, supra note 12; taking indecent liberties with a child, e. g., Wilson v. United States, supra note 12; sodomy, Calhoun v. United States, supra note 12; and invitation for immoral purposes, Kelly v. United States, supra note 12.

14. "The crime of rape is not always easy to establish. It most generally depends

all too frequently such complainants have an urge to fantacize or even a motive to fabricate,[15] while typically the innocent, as well as the guilty, have only their own testimony upon which to rely.[16] We realize, too, that recriminations of that character pose an unusual threat to the reliability of a judgment on credibility of the allegedly defiled *vis a vis* the alleged defiler.[17] Thus in prosecutions for sodomy [18] and taking indecent liberties with a minor,[19] like in other sex cases,[20] "the traditional skepticism of courts toward [that] sort of accusation" [21] has generated the requirement that satisfactory corroboration of the complainant's account, as well as nega-

tion of reasonable doubt as to the accused's guilt, must precede any conviction.[22]

■ In determining the corroborative power of particular evidence, two intertwined and sometimes vexing problems often appear. What aspects of the complainant's version must be confirmed? What may serve to adequately corroborate them? In responding to these questions, we try to steer between the Scylla of a corroboration requirement incapable of attainment and the Charybdis of gutting the corroboration safeguard.[23]

■ As to the first of the problems, we have always deemed corroboration of the corpus deliciti essential, and have

---

upon the testimony of a single witness to the actual or alleged commission of the crime, and unless her testimony is beyond question or doubt, or made so by surrounding circumstances, there is danger in conviction." Lyles v. United States, *supra* note 12, 20 App.D.C. at 562.

15. *E. g.*, People v. Smallwood, 306 Mich. 49, 10 N.W.2d 303, 147 A.L.R. 439 (1943); 3 J. Wigmore, Evidence § 924 (a) (3d ed. 1940); Note, Corroborating Charges of Rape, 67 Col.L.Rev. 1137, 1138–39 (1967).

16. "The nature of the crime is such * * that eyewitnesses seldom are available." Note, Corroborating Charges of Rape, *supra* note 15, 67 Col.L.Rev. at 1139, quoting Stapleman v. State, 150 Neb. 460, 34 N.W.2d 907, 910 (1948). "[Rape] is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent." 1 Hale, Pleas of the Crown *635.

17. Roberts v. State, 106 Neb. 362, 183 N.W. 555, 557 (1921); 3 J. Wigmore, Evidence § 924(a), at 459 (3d ed. 1940); Note, Corroborating Charges of Rape, *supra* note 15, 67 Col.L.Rev. at 1139.

18. Speaking of that offense, Blackstone said: "What has been here observed, especially with regard to the manner of proof, which ought to be more clear in proportion as the crime is the more detestable, may be applied to another offence, of a still deeper malignity; the infamous *crime against nature*, committed either with man or beast. A crime which ought to be strictly and impartially proved, and then as strictly and impartially

punished. But it is an offence of so dark a nature, so easily charged, and the negative so difficult to be proved, that the accusation should be clearly made out: for, if false, it deserves a punishment inferior only to that of the crime itself." 4 Bl.Comm. 215, quoted in Kelly v. United States, *supra* note 12, 90 U.S.App.D.C. at 128, 194 F.2d at 153.

19. See Wilson v. United States, *supra* note 12.

20. See the cases cited *supra* note 12.

21. Wilson v. United States, *supra* note 12, 106 U.S.App.D.C. at 227, 271 F.2d at 493. See also Allison v. United States, *supra* note 12, 133 U.S.App.D.C. at 163, 409 F. 2d at 449.

22. See the cases cited *supra* note 12.

23. In Kelly v. United States, *supra* note 12, 90 U.S.App.D.C. at 128–129, 194 F.2d at 154, speaking of a prosecution for unlawful invitation for immoral purposes pursuant to D.C.Code § 22–2701 (1967 ed.), we observed: "So, as in all acute conflicts between public interests or between public and private interests, the law must be exceedingly careful in its processes. While enforcement of this particular statute must seek the prevention of the offense, it must also seek to prevent unwarranted irreparable destruction of reputations, and it must seek to prevent the equally criminal offense of blackmail; it must not foster conditions or practices which make easy and encourage that offense. Adjustment of methods to foster all these objectives is not simple, and the balancing of the conflicting public interests involved is not easy, but within limits such achievements are possible."

insisted that so much of the corroboration requirement be strictly observed.[24] And while, as more clearly emerges from our later decisions, corroboration of the identity of the perpetrator is ordinarily essential,[25] we have recognized that some circumstances which may corroborate the corpus delicti may also do service toward confirmation of the complainant's identification. In Franklin v. United States,[26] a rape prosecution, we pointed out that "the danger of an erroneous identification in a rape case is not of the same magnitude as the danger of a fabricated rape," [27] and that "in the circumstances of a particular case, a convincing identification by the complaining witness based on adequate opportunity to observe need not be further corrobo-

rated * * *." [28] Very recently, our decision in Allison v. United States [29] forecast the application of similar considerations in other types of sex cases.[30] For in the final analysis, as to both the corpus delicti and the identification, "[t]he need for corroboration depends upon the danger of falsification." [31]

We first addressed ourselves to the second of these problems more than a half-century ago in Kidwell v. United States.[32] There, in reversing a conviction of carnal knowledge, we observed that such a conviction "will be sustained upon the testimony of the injured party alone," [33] but pointed out that "where the courts have so held, the circumstances surrounding the parties at the time were such as to point to the probable

24. Allison v. United States, supra note 12, 133 U.S.App.D.C. at 162–164, 409 F.2d 448–50; Bailey v. United States, supra note 12, 132 U.S.App.D.C. at 87, 405 F.2d at 1357; Borum v. United States, supra note 12, 133 U.S.App.D.C. at 151 n. 16, 409 F.2d at 437 n. 16; Calhoun v. United States, supra note 12, 399 F.2d at 1001; Thomas v. United States, supra note 12, 128 U.S.App.D.C. at 234, 387 F.2d at 192; Franklin v. United States, supra note 12, 117 U.S.App. D.C. at 334–335, 330 F.2d at 208–209; Wilson v. United States, supra note 12; Walker v. United States, supra note 12, 96 U.S.App.D.C. at 152, 223 F.2d at 617; McGuinn v. United States, supra note 12, 89 U.S.App.D.C. at 198, 191 F.2d at 478; Ewing v. United States, supra note 12, 77 U.S.App.D.C. at 17, 135 F.2d at 636; Kidwell v. United States, supra note 12, 38 App.D.C. at 573.

25. Allison v. United States, supra note 12, 133 U.S.App.D.C. at 162, 409 F.2d at 448; Borum v. United States, supra note 12, 133 U.S.App.D.C. at 151 n. 16, 409 F.2d at 437 n. 16; Calhoun v. United States, supra note 12, 399 F.2d at 1001; Thomas v. United States, supra note 12, 128 U.S. App.D.C. at 234, 387 F.2d at 192; Franklin v. United States, supra note 12, 117 U.S.App.D.C. at 334–335, 330 F.2d at 208–209; Walker v. United States, supra note 12, 96 U.S.App.D.C. at 155–156, 223 F.2d at 620–621 (dissenting opinion). See also Dade v. United States, 132 U.S.App. D.C. 229, 231, 407 F.2d 692, 694 (1968); Ewing v. United States, supra note 12, 77 U.S.App.D.C. at 16, 135 F.2d at 635;

Kidwell v. United States, supra note 12, 38 App.D.C. at 571–573.

26. Supra note 12.

27. 117 U.S.App.D.C. at 334, 330 F.2d at 208. See also Allison v. United States, supra note 12, 133 U.S.App.D.C. at 163 n. 9, 409 F.2d 449 n. 9; Thomas v. United States, supra note 12, 128 U.S.App. D.C. at 234, 387 F.2d at 192.

28. Franklin v. United States, supra note 12, 117 U.S.App.D.C. at 335, 330 F.2d at 209. And in Thomas v. United States, supra note 12, 128 U.S.App.D.C. at 234, 387 F.2d at 192, we stated that "where * * * (1) there is no dispute that a rape in fact occurred, (2) consent is not an issue, and (3) there is no evidence undermining the trustworthiness of the complaining witness, her identification 'based on adequate opportunity to observe' may need no further corroboration." (quoting Franklin v. United States, supra.) See also Borum v. United States, supra note 12, 133 U.S.App.D.C. at 151 n. 16, 409 F.2d at 437 n. 16; Calhoun v. United States, supra note 12, 399 F.2d at 1002–1003.

29. Supra note 12.

30. 133 U.S.App.D.C. at 163, 409 F.2d at 449 n. 9.

31. Thomas v. United States, supra note 12, 128 U.S.App.D.C. at 234, 387 F.2d at 192. See also Calhoun v. United States, supra note 12, 399 F.2d at 1003.

32. Supra note 12.

33. 38 App.D.C. at 573.

guilt of the accused, or, at least, corroborate indirectly the testimony of the prosecutrix." [34] Down through the years, the *Kidwell* rationale has served as a general test of the sufficiency of corroborative evidence, but not entirely without challenge. In Ewing v. United States,[35] we were asked to substitute for the *Kidwell* yardstick a requirement of " 'direct corroboration of the prosecutrix,' " [36] and we rejected the request. "If by 'direct corroboration' is meant the testimony of an eyewitness," we said, "the result would be in most cases that conviction could not be had except upon the defendant's confession.[37] If it means less than that, it is hard to see how it could relate to anything other than circumstantial evidence which supports the prosecutrix's story, and this is what the *Kidwell* case requires." [38] Adding that what *Kidwell* demands is "corroboration, in the sense that there must be circumstances in proof which tend to support the prosecutrix' story," [39] we observed that "to safeguard the defendant by requiring corroboration in this sense is one thing. To throw around him a wall of immunity

requiring the testimony of an eyewitness or 'direct evidence,' which is more than circumstantial, in support of the prosecutrix' story is another." [40]

■ And so it is today that from the body of our past decisions we derive the standards which corroborative evidence must meet. Corroboration need not be "direct"—that is, eyewitness—testimony; [41] circumstantial evidence may suffice.[42] Much less need corroboration, as distinguished from the evidence as a whole, connote guilt beyond a reasonable doubt, or even by a preponderance.[43] It suffices that there are "circumstances in proof which tend to support the prosecutrix' story," [44] and in each case the corroboration "must be evaluated on its own merits." [45]

### III

■ The Government's evidence, we conclude, was insufficient to corroborate the complainant's testimony as to the first four counts of the indictment—the alleged incidents of January 24 and 25. We find in the record little beyond that testimony which tends to support the

34. *Id.*

35. *Supra* note 12.

36. 77 U.S.App.D.C. at 17, 135 F.2d at 636.

37. But of course, the confession itself must be corroborated. *E. g.*, Warszower v. United States, 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876 (1941). See also Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

38. Ewing v. United States, *supra* note 12, 77 U.S.App.D.C. at 17, 135 F.2d at 636.

39. *Id.* at 17, 135 F.2d at 636.

40. *Id.*

41. Allison v. United States, *supra* note 12, 133 US.App.D.C. at 162, 409 F.2d at 448; Calhoun v. United States, *supra* note 12, 399 F.2d at 1001; Walker v. United States, *supra* note 12, 96 U.S. App.D.C. at 152, 223 F.2d at 617; Ewing v. United States, *supra* note 12, 77 U.S. App.D.C. at 16–17, 135 F.2d at 635–636; Kidwell v. United States, *supra* note 12, 38 App.D.C. at 573.

42. *E. g.*, Calhoun v. United States, *supra*, note 12, 399 F.2d at 1001 n. 1; McGuinn v. United States, *supra* note 12, 89 U.S. App.D.C. at 198, 191 F.2d at 478; Ewing v. United States, *supra* note 12, 77 U.S. App.D.C. at 17, 135 F.2d at 636.

43. See the text at notes 34 and 39, *supra.*

44. Allison v. United States, *supra* note 12, 133 U.S.App.D.C. at 162, 409 F.2d at 448, quoting Ewing v. United States, *supra* note 12, 77 U.S.App.D.C. at 17, 135 F.2d at 636; Borum v. United States, *supra* note 12; 133 U.S.App.D.C. at 152–153, 409 F.2d at 438–39; Calhoun v. United States, *supra* note 12, 399 F.2d at 1001; Thomas v. United States, *supra* note 12, 128 U.S.App.D.C. at 234, 387 F.2d at 192.

45. Bailey v. United States, *supra* note 12, 132 U.S.App.D.C. at 87, 405 F.2d at 1357. See also Wilson v. United States, *supra* note 12, 106 U.S.App.D.C. at 227, 271 F.2d at 493; Kelly v. United States, *supra* note 12, 90 U.S.App.D.C. at 129, 194 F.2d at 154.

theory that the events assigned for those days actually occurred. About as much has to be said for the fifth and sixth counts—the alleged incidents of January 26. As to them, the case differs only with respect to the Vaseline jar found in the waste basket in appellant's bedroom. The discovery of the empty container of so common a household item could not reasonably be accepted by a jury as ample corroboration for the activities the complainant said took place on that day.

On the seventh count, however—the alleged incident of January 27—the Government's presentation was considerably more formidable. The complainant insisted upon a sexual contact on that date at a time when, according to his description,[46] appellant may have had active gonorrhea.[47] The testimony in that regard draws support from the medical findings eight days after the contact allegedly took place. The disease, we are told, can be transmitted through just such a contact under just such conditions as the complainant described from the witness stand,[48] and after contraction it can develop to an advanced stage within five days.[49] That the complainant had a sexual contact with someone who then had gonorrhea is evident from the uncontradicted medical evidence that the disease cannot otherwise be communicated.[50]

The remaining circumstances of record, however, fall partly on each side of the controversy over corroboration of the alleged incident of January 27. The 15-year old complainant had misrepresented to his mother as to where he was going on one of the nights in question.[51] He registered no complaint as to appellant's alleged conduct before the signs of venereal disease appeared, and even then he refused to tell his mother or the doctor about the events later charged in the indictment. And it is conceivable, of course, whether his experiences were homo- or hetero-sexual, that he may have wanted to shield his guilty partner by putting the blame on an innocent third person.

There are, on the other hand, circumstances in proof that reduce the risk that the complainant's version was a fabrication. Opportunity for commission of the January 27 act [52]—albeit for the others as well—is evinced by enough presence in appellant's basement studio and, importantly, his bedroom to enable the complainant to describe their physical appointments in a fashion agreeable with the description the police officer gave at the trial.[53] The two photographs of the complainant, introduced at trial as the handiwork of appellant, lent credence to the claim that the complainant had visited appellant in his home on more than one occasion after the January 23 pickup of the photographs for the neighbor's son.[54] The complainant's descriptions of the indecent photographs appel-

---

46. See note 7, *supra*.

47. For cases involving the use of medical evidence in corroboration of a sex offense, see Allison v. United States, *supra* note 12, 133 U.S.App.D.C. at 162 n. 8, 409 F.2d at 448 n. 8; Borum v. United States, *supra* note 12, 133 U.S.App.D.C. at 151–153, 409 F.2d at 437–439; Miller v. United States, *supra* note 12, 93 U.S.App.D.C. at 78, 207 F.2d at 35; Ewing v. United States, *supra* note 12, 77 U.S.App.D.C. at 17, 135 F.2d at 636.

48. See the text *supra* at note 8. That appellant, when examined on February 9, was found not to have gonorrhea does not demonstrate that he did not have it on January 27, when the act charged in the seventh count of the indictment allegedly was committed. The stipulated medical evidence establishes that even severe cases of that disease can be cured within a period of seven days.

49. See the text *supra* at note 8.

50. See the text *supra* at note 8.

51. See note 3, *supra*.

52. Compare Allison v. United States, *supra* note 12, 133 U.S.App.D.C. at 162 n. 8, 409 F.2d at 448 n. 8; Miller v. United States, *supra* note 12, 93 U.S.App.D.C. at 78, 207 F.2d at 35.

53. See the text *supra* at p. 1133.

54. The neighbor testified that complainant went to and returned from appellant's house within a period of 15 minutes, hardly enough time for the taking and developing of photographs.

lant allegedly showed him and of the place where appellant allegedly kept them were closely similar to the descriptions testified to by the neighbor's son.

Moreover, the complainant had known appellant for some time prior to the criminal incidents charged, and the circumstances under which they allegedly took place were conducive to positive identification.[55] The exhaustive cross-examination of the complainant brought out inconsistencies on some of the smaller details, but left his testimony in its principal aspects substantially intact.[56] And certainly there is no more reason to believe that complainant was lying as to how and from whom he contracted gonorrhea than to conclude that he was telling the truth.

 Thus, we find the Government's corroboration on the seventh count neither lacking nor overpowering, and this evaluation largely sets the stage for a disposition responsive to the rules governing appellate review. The adequacy of corroborative evidence to confirm the complainant's testimony on a sex charge, as well as the actual sufficiency of the overall evidence to eliminate reasonable doubt as to the accused's guilt, are questions for the jury to resolve under proper instructions from the court.[57] But before a jury may consider those questions, it is the responsibility of the trial court, when appropriately invoked, to initially determine whether the corroboration is legally sufficient to warrant a submission to the jury.[58]

Here, after appellant advanced his challenge, the trial judge indulged counsel in extensive oral argument on the dispute over corroboration. As the record makes evident, the judge gave the matter careful consideration and, though voicing some doubt, sustained the Government's view that the issue should go to the jury on all of the counts. That we disagree with the trial judge's conclusions as to the caliber of the corroboration on the first six counts of the indictment does not mean that his conclusion as to the seventh does not deserve the deference we normally accord trial rulings.[59]

In making the appellate assessment of the legal sufficiency of the corroboration, we are constantly advertent to the consideration that we do not enjoy the vantage point of the trial judge.[60] Consequently, we do not undertake to measure the corroborative capability of particular evidence by the force which the cold record exerts upon us, but rather by the extent to which it might legitimately have influenced the trial judge and then a trial jury in the respective roles in which the law casts them.[61] We consider the question in this case to be very close but, upon our own review of the record, we conclude that the degree of corroboration of the complainant's testimony as to the seventh count was legally sufficient to carry the case to the jury on that count alone.

55. See note 28, *supra*, and accompanying text.

56. See note 9, *supra*.

57. Borum v. United States, *supra* note 12, 133 U.S.App.D.C. at 152, 409 F.2d at 438; Calhoun v. United States, *supra* note 12, 399 F.2d at 1001–1002; Kidwell v. United States, *supra* note 12, 38 App.D.C. at 572. See also Bailey v. United States, *supra* note 12, 405 F.2d at 1357–1358; Franklin v. United States, *supra*, note 12, 117 U.S.App. D.C. at 334, 330 F.2d at 208; Ewing v. United States, *supra* note 12, 77 U.S. App.D.C. at 15, 135 F.2d at 634.

58. Borum v. United States, *supra* note 12, 133 U.S.App.D.C. at 152, 409 F.2d at 438; Calhoun v. United States, *supra* note 12, 399 F.2d at 1001–1002. See also Walker v. United States, *supra* note 12, 96 U.S.App.D.C. at 154, 223 F.2d at 619.

59. Compare Post v. United States, 132 U.S.App.D.C. 189, 193–194, 407 F.2d 319, 323–324 (1968), cert. denied 393 U.S. 1092, 89 S.Ct. 863, 21 L.Ed.2d 784 (Feb. 24, 1969).

60. Compare Calhoun v. United States, *supra* note 12, 399 F.2d at 1001. See also Post v. United States, *supra* note 59, 407 F.2d at 323–324.

61. Compare Post v. United States, *supra* note 59, 407 F.2d at 323–324.

## IV

Appellant's second contention—that the trial judge erred in admitting into evidence the written statement that the complainant gave to the police on February 6—draws into consideration the principles governing the use of a witness' prior extrajudicial statement in an endeavor to bolster his trial testimony.

When a witness' testimony stands without attempted impeachment, his out-of-court utterances are ordinarily inadmissible.[62] Even where impeachment of the witness is sought by a showing of inconsistency between the two, a previous extrajudicial declaration consistent with his testimony is normally inadmissible[63] for the simple reason that mere repetition does not imply veracity.[64] Prior statements by the witness are admitted—and then only for rehabilitative purposes[65]—only in those few exceptional situations where, as experience has taught, they could be of clear help to the factfinder in determining whether the witness is truthful.[66]

A recognized exception, by virtue of which the complainant's February 6th statement might qualify for admission, is that "if some portions of a statement made by a witness are used on cross-examination to impeach him, other portions of the statement which are relevant to the subject matter about which he was cross-examined may be introduced in evidence to meet the force of the impeachment."[67] In the case at bar, defense counsel, on the complainant's cross-examination, first sought to exploit inconsistencies wholly within his trial testimony. Counsel then proceeded to contradictions between the complainant's testimony at the preliminary hearing and the testimony he gave at the trial. Finally, counsel pointed to additional conflicts between the complainant's trial testimony and the February 6 statement he gave to the police.[68]

Examination by the jury, in the context of the complainant's full statement, of the excerpts previously utilized on his cross-examination was calculated to assist a determination as to just how serious the inconsistencies might be.[69] Thus we conclude that the trial judge could properly let in those portions of the statement that were relevant to any other portion made the subject of cross-examination.[70] Relevance is a matter committed primarily to the sound judgment of the trial judge,[71] and here we cannot say that he erred.

Appellant did, however, register particular objection to one sentence in his statement, and for an entirely different reason. That sentence, the third in the opening paragraph, read:

[The neighbor's son] told me then not to hang around [appellant] and said something about [appellant] was crazy.

62. *E. g.,* Gregory v. United States, 125 U.S.App.D.C. 140, 146, 369 F.2d 185, 191 (1966) See also 4 J. Wigmore, Evidence § 1124 (3d ed. 1940).

63. Copes v. United States, 120 U.S.App. D.C. 234, 236 n. 3, 345 F.2d 723, 725 n. 3 (1964); Cafasso v. Pennsylvania R.R., 169 F.2d 451, 453 (3d Cir. 1948); United States v. Leggett, 312 F.2d 566, 572 (4th Cir. 1962); Affronti v. United States, 145 F.2d 3, 7 (8th Cir. 1944).

64. 4 J. Wigmore, Evidence § 1126 (3d ed. 1940).

65. 4 J. Wigmore, Evidence § 1132 (3d ed. 1940).

66. See the cases cited *supra* note 63. See also 4 J. Wigmore Evidence § 1119–29 (3d ed. 1940); C. McCormick, Evidence §§ 105–109 (1954).

67. Affronti v. United States, *supra* note 63, 145 F.2d at 7. See also United States v. Smith, 328 F.2d 848, 850 (6th Cir.), cert. denied 379 U.S. 936, 85 S.Ct. 336, 13 L.Ed.2d 346 (1964); Cafasso v. Pennsylvania R.R., *supra* note 63, 169 F.2d at 453; McCall v. Pittsburgh, C. & Y. Ry., 168 F.Supp. 665, 667 (W.D.Pa.1958).

68. See note 9, *supra.*

69. See the cases cited *supra* note 67.

70. See the cases cited *supra* note 67.

71. Post v. United States, *supra* note 59, 407 F.2d at 323–324.

That much of the statement was irrelevant to any point under discussion on complainant's direct or cross-examination, and so was not admissible under any exception to the rule against putting a witness' out-of-court statements before the jury. Both Government and defense counsel urged the trial judge to delete that sentence, but the judge ruled that the jury be given the statement in its entirety.

Appellant was on trial for offenses of such a character that a suggestion of eccentricity is apt to operate on non-legal minds as a step in the direction of guilt. In popular connotation, there is but a fine line between "crazy" and "queer," and, as is well known, in slang "queer" is a commonly used synonym for "homosexual."

As defense counsel argued to the trial judge, "the jury might well begin to speculate on what [the neighbor's son] based his opinion that the defendant is crazy," and we think that a likely possibility, in the circumstances here, particularly the neighbor's son's admonition that the complainant shun appellant, is that the jury might have thought that it was the neighbor's son's belief that appellant had homosexual tendencies. That possibility is strengthened by the neighbor's son's testimony at the trial that, upon visiting appellant in his bedroom, he "was shown some pictures of homosexuals."

The sentence in question contained the only declaration from anyone other than the complainant implying that appellant had a reputation for homosexuality, a character the proof of which the Government was not free to initiate,[72] much less to imply through hearsay. And as ever so recently we had occasion to observe, "[e]vidence of homosexuality has an enormous proclivity for humiliation and degradation of a participant. * * * * "[73]

In refusing to strike the impugned sentence from the complainant's statement before it went to the jury, we think the trial judge committed prejudicial error.[74] True it is that he explained to the jury that the statement could be weighed only in relation to the complainant's credibility, but the explanation suffers from the shortcomings inherent in instructions as measures to confine a jury's consideration within legitimate bounds.[75] Moreover, the danger of harm to the accused increases in much the same proportion that the Government's case against him becomes weaker,[76] and in a case as close as this one is we can ill afford to assume the risk that appellant was not hurt by the inadmissible sentence that got before the jury.

The conviction is reversed, and the case is remanded to the District Court with direction to enter a judgment of acquittal on the first six counts of the indictment, and to grant appellant a new trial on the seventh.

Reversed and remanded.

Circuit Judge BURGER dissents.

72. See 1 J. Wigmore, Evidence § 57 (3d ed. 1940).

73. Tinker v. United States, 135 U.S.App. D.C. ——, ——, 417 F.2d 542 (Mar. 3, 1969).

74. Compare State v. Thomas, 79 Ariz. 355, 290 P.2d 470, 473 (1955); Spencer v. State, 95 Ga.App. 454, 98 S.E.2d 94 (1957); Davidson v. State, 330 P.2d 607, 623–624 (Okl.Cr.1958).

75. E. g., Bruton v. United States, 391 U.S. 123, 128–137, 88 S.Ct. 1620, 20 L.Ed. 2d 476 (1968).

76. E. g., Cross v United States, 122 U.S. App.D.C. 283, 285, 353 F.2d 454, 456 (1965). See also Oliver v. United States, 118 U.S.App.D.C. 302, 306, 335 F.2d 724, 728 (1963), cert. denied 379 U.S. 980, 85 S.Ct. 686, 13 L.Ed.2d 571 (1964), quoting Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).